UNITED STATES of America, Plaintiff–Appellee,

v.

Richard S. OLDFIELD, Defendant–Appellant.

No. 87–6301.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 2, 1988.
Decided Sept. 30, 1988.

abetting in mail fraud which stem from his involvement in a substantial odometer tampering scheme. The principal issues on appeal are (1) whether the district court correctly held that prosecution of Oldfield under the mail fraud statute was not prohibited by the existence of odometer tampering proscriptions in 15 U.S.C. § 1984 *et seq.;* and (2) whether the district court correctly held that sufficient evidence had been presented to establish the use of the mails in furtherance of a fraudulent scheme. For the reasons that follow, we affirm.

I.

On June 10, 1986, an indictment was returned by the United States Grand Jury for the Eastern District of Kentucky at Covington charging defendant Richard Oldfield with eighteen counts of aiding and abetting the commission of mail fraud pursuant to 18 U.S.C. §§ 1341 and 2. Each count alleged a scheme continuing from on or before April 17, 1984, and through at least July 5, 1985, wherein Oldfield and others "rolled back" odometers on used automobiles, obtained fraudulent automobile titles reflecting a false mileage, sold the automobiles to purchasers, and caused a Kentucky title for those automobiles to be mailed to the consumer. Each count involved a separate automobile, consumer, and mailing.

On July 10, 1987, Oldfield moved for a continuance of his trial date. The district court granted the motion and further directed in the pretrial order that all pretrial motions be filed no later than August 10, 1987. Supplemental Joint Appendix at 14.

On the day of trial, November 2, 1987, Oldfield's counsel filed a thirty-two-page motion to dismiss the indictment and supporting memorandum raising the two issues presently before this court. Before the trial commenced, a hearing was held by the district court and the issue of the timeliness of the motion was raised by counsel for the government. The following collo-

Ronald D. Bowling, argued, Trimble and Henry, Lexington, Ky., J. Montjoy Trimble, Kevin G. Henry, for defendant-appellant.

Louis DeFalaise, U.S. Atty., Lexington, Ky., James Zerhusen, argued, for plaintiff-appellee.

Before ENGEL, Chief Judge, MILBURN, Circuit Judge, and DOWD, District Judge *.

MILBURN, Circuit Judge.

Defendant-appellant Richard Oldfield appeals his jury convictions for aiding and

---

* Honorable David D. Dowd, Jr., United States District Court for the Northern District of Ohio, sitting by designation.

quy between the court and counsel then took place:

THE COURT: Why is this Motion filed in this delayed fashion?

MR. TRIMBLE [Counsel for Oldfield]: I apologize to the Court, Your Honor, for the untimely filing. It [sic] will cede, Your Honor, that the Motion was filed out of time. And, for that reason, Your Honor, we will withdraw the Motion to Dismiss.

THE COURT: Well, I don't want you to withdraw any motion on that basis. My only question at this time is, why is it late?

. . . .

MR. TRIMBLE: Well, quite frankly, Your Honor, it—you know, the thought of the issue had been running through my head, and my associate's and partner's, for some time, but we had just not got into the legislative history, the other background which we had raised.

. . . .

THE COURT: But, you are just saying that you were untimely because you were untimely.

MR. TRIMBLE: Basically, that's it, Your Honor. Yes, sir.

J.A. 441–443. Although both counsel and the court conceded that the motion was untimely, and that there was no cause for its tardiness, the district court nevertheless considered the motion and subsequently found it to be without merit.

A trial was held from November 2, 1987, through November 4, 1987. At the close of the prosecution's case, Oldfield moved for dismissal of the indictment and/or judgment of acquittal, alleging that insufficient evidence supported the mail fraud indictment. The district court overruled the motion, but granted Oldfield's request that the jury be instructed that misdemeanor odometer tampering was a lesser included offense. Oldfield was subsequently found guilty on all eighteen counts of mail fraud.

II.

From 1984 until November of 1987, Oldfield owned and operated Oldfield's Used Cars in Mt. Sterling, Kentucky. During that time, Oldfield, his brother, Joseph Oldfield, and Terry McCarty were car salesmen. The defendant-appellant was responsible for obtaining used cars from wholesalers for his business to retail. He generally purchased late model, high mileage used automobiles from various wholesalers including several businesses in Cincinnati, Ohio.

Jerry Klein, along with his son, Todd Klein, operated Regency Motors in Cincinnati, Ohio, during 1984 and 1985. Regency Motors would purchase used automobiles and wholesale those vehicles to other car dealers, one of which was Oldfield. Oldfield and the Kleins agreed to a scheme wherein automobiles obtained by Oldfield from Regency or other dealerships in Ohio would have their odometers altered or "rolled back" in order that Oldfield could successfully retail the automobiles at a higher price.

Oldfield instructed Todd Klein as to how many miles to "roll back" on automobiles supplied by Regency Motors. Moreover, Oldfield himself was directly involved in rolling back odometers on vehicles obtained from other Cincinnati dealers by having Oldfield Used Cars' mechanics remove the dash and odometer so that Oldfield could alter the mileage. The standard procedure would be that Oldfield would pay the mechanic a $25.00 fee over and above his regular salary for removing the dash and then Oldfield would roll the odometer back to the mileage he desired.

Whenever Jerry Klein purchased an automobile destined for Oldfield or Oldfield purchased an automobile from another dealer, they received a certificate of title bearing an assignment to either Regency Motors or Oldfield Used Cars. This certificate of title listed the true mileage of the vehicle. To carry out their scheme, Klein and Oldfield arranged with Hamilton County, Ohio, Deputy Court Clerk Beverly Tilford to have an Ohio automobile title issue for each vehicle in the name of Oldfield

Used Cars listing the false "rolled back" mileage on the title's face. Tilford was paid $100.00 for each title she falsely prepared and supplied to Klein for Oldfield, and she testified that she prepared well over one hundred fraudulent titles. The $100.00 bribe was included in the price Oldfield paid for the cars from Regency Motors or in the case of cars obtained by Oldfield from other dealers, was paid to the Kleins by Oldfield and passed on to Tilford.

As acknowledged by Richard Oldfield's signature, documentation was provided in each instance including the original title, odometer statements, and bills of sale reflecting the true mileage of each vehicle prior to the "roll back." Oldfield received the fraudulent Ohio titles from the Kleins and had the vehicles transported to his Mt. Sterling, Kentucky, used car lot. The fraudulent Ohio titles supplied by Tilford listed Oldfield Used Cars as titleholder with the false mileage appearing on the face of the title. Oldfield would then use the fraudulent Ohio titles as documentation of ownership in the resale of the used cars in Kentucky.

Eighteen of the automobiles obtained by Oldfield Used Cars from Regency Motors or other Cincinnati dealers and fraudulently titled by Beverly Tilford in the manner described above are involved in the present case. The eighteen automobiles in question were sold by Oldfield Used Cars in Kentucky to consumers and used automobile dealers either by direct sale or by automobile auction.

In every sale, a fraudulent Ohio title was used by Oldfield in the transfer of title from Oldfield to the purchaser. In each instance, a Kentucky automobile title was obtained by a purchaser after Oldfield had falsely represented the mileage of the vehicle in a title application or caused others to do so by reference to the respective fraudulent Ohio title obtained from Tilford.

*Before any resident of Kentucky who owns a motor vehicle may operate it on state highways, he must register the vehicle and apply for a certificate of title.* Ky.Rev.Stat.Ann. § 186A.065 (Michie/Bobbs–Merrill Supp.1986). Ky.Rev.

Stat.Ann. § 186A.170 provides that the Kentucky Department of Vehicle Regulation, located in Frankfort, Kentucky, shall issue an automobile certificate of title following receipt of an application in proper form, unless it finds discrepancies with respect to its supporting documents, and mail a certificate of title in the name of the owner. The titling process begins with the completion of a title application/vehicle transaction record by the seller and purchaser, wherein the vehicle is described and the seller attests to the mileage of the vehicle at the time of the transfer. In support of the application, certain documents, including the existing title to the vehicle, must be attached establishing ownership. The application and documents are presented to the county clerk where they are examined, and an inspection of the vehicle is conducted by a sheriff to verify the vehicle identification number and odometer reading as listed in the application for title.

If a variance is discovered upon inspection of the application and supporting documents, the application is rejected. If the examination reveals no discrepancy, the county clerk enters the title application information into a computer system connected with the Department of Vehicle Regulation, and a title application number is generated and entered on the application. No title issues at the county level, however, as the county clerk mails the application and documents to Frankfort, where the application is again examined and reviewed. If the documentation supports the information listed on the application for title and no other discrepancies are discovered, a Kentucky title will be generated by the Department of Vehicle Regulation and mailed to the listed buyer.

The new Kentucky title includes an odometer reading on its face consistent with the mileage listed on the application for title. The title established proof of ownership of the vehicle and is necessary for the future transfer of vehicle ownership. Ky.Rev.Stat.Ann. § 186A.215 (Michie/Bobbs–Merrill Supp.1986).

Unknown to Oldfield, Jerry Klein began cooperating with the Federal Bureau of

Investigation during early 1987 in an investigation of the odometer "roll backs." On April 4 and April 12, 1987, Klein spoke with Oldfield by telephone and recorded the conversation. On April 4, 1987, Oldfield told Klein that the FBI had been to see him, that they were in a lot of trouble, and that the FBI was investigating the 1983 and 1984 odometer "roll backs." Oldfield told Klein that he had given them his 1983 records but not his 1984 records. Oldfield instructed Klein to throw away any records that he had retained. He also asked Klein if he always paid cash to Tilford. Finally, Oldfield stated, "I'm just guilty. We all are." During Oldfield's trial, the tapes were played to the jury, and the transcripts were admitted into evidence.

As earlier indicated, Oldfield raises two issues before this court. First, he contends that the district court incorrectly held that prosecution of Oldfield under the mail fraud statute was not prohibited by the existence of odometer tampering proscriptions in 15 U.S.C. §§ 1984 *et seq.* Second, he argues that the district court incorrectly held that sufficient evidence had been presented to establish the use of the mails in furtherance of the fraudulent scheme.

### III.

#### A. *Applicability of the Mail Fraud Statute*

■ Oldfield contends that this court should vacate his conviction because the mail fraud statute charged in the indictment is inapplicable to his conduct. He contends that Congress intended the Motor Vehicle Information and Cost Savings Act of 1972, 15 U.S.C. § 1981 *et seq.,* as amended, to be the exclusive means for prosecuting individuals involved in automobile odometer tampering. However, we hold that this issue has not been properly preserved for appellate review.

Federal Rule of Criminal Procedure 12(b) provides in relevant part:

Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion

of the judge. *The following must be raised prior to trial:*

. . . . .

(2) Defenses and objections based on defects in the indictment or information (*other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings*).…

(Emphasis supplied). Federal Rule of Criminal Procedure 12(c) provides:

Unless otherwise provided by local rule, the court may, at the time of the arraignment or as soon thereafter as practicable, set a time for the making of pretrial motions or requests and, if required, a later date of hearing.

Finally, Federal Rule of Criminal Procedure 12(f) provides some relief for defendants who fail to timely make the required pretrial motions.

Failure by a party to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (c), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

This court strictly applies Rule 12(b), and has repeatedly held that failure to raise 12(b) motions in a timely fashion precludes appellate review. *See United States v. Davis,* 809 F.2d 1194, 1208 (6th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 3234, 97 L.Ed.2d 740 (1987); *United States v. Sachs,* 801 F.2d 839, 847 (6th Cir.1986); *United States v. Jones,* 766 F.2d 994, 999 (6th Cir.), *cert. denied,* 474 U.S. 1006, 106 S.Ct. 526, 88 L.Ed.2d 458 (1985); *United States v. Worthington,* 698 F.2d 820, 823–24 (6th Cir.1983); *United States v. Woods,* 544 F.2d 242, 251 (6th Cir.1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed. 2d 361 (1977). The issues raised in an untimely Rule 12(b) motion are waived, even though the district court rules on the merits of the motion despite its untimeliness. As we previously stated in *Sachs:*

[I]f a party fails to timely file a Rule 12(b) motion, the merits of the motion are not preserved for appeal even if the district court chose to hear the motion; the district court's review of the motion "does not alter the fact that the motion to suppress was made in violation of Fed.R.Crim.P. 12(b)(3), nor does it alter the fact that the defendant waived the objection under Criminal Rule 12(f)."

801 F.2d at 847 (citing *Worthington*, 698 F.2d at 824). A district court's ruling on an untimely 12(b)(2) motion challenging an indictment is proper only when the district court finds that cause and actual prejudice exist. *See Jones*, 766 F.2d at 999 (defendants failed to make the motion in a timely manner because they were unaware of the grounds for the motion until the testimony of a certain witness at trial.); *United States v. Johnson*, 679 F.2d 54, 57 (5th Cir.1982).

In the present case, the district court did not make a finding of cause and prejudice prior to entertaining the untimely motion. Moreover, the record is clear that such could not have been established. Oldfield conceded that his motion was untimely, and also conceded that no cause existed for the untimeliness. Therefore, this issue is not preserved for appellate review even though the district court specifically ruled on the merits in dismissing Oldfield's motion.

Although Oldfield conceded that the motion was untimely at trial, he now contends that this issue was not waived because (1) he renewed the issue as part of his motion for acquittal at the end of the government's proof; and (2) this issue falls within 12(b)(2)'s exceptions since it deals with the failure of the indictment "to charge an offense." We disagree.

■ Initially, we hold that a defendant cannot resurrect an issue previously waived through a motion at trial, no matter how styled. To allow that would virtually eliminate the application of Rule 12 of the Federal Rules of Criminal Procedure.

■ We hold that the issue involved herein is not one that is excepted by Rule 12(b)(2). The essence of Oldfield's argument is that he was improperly indicted for mail fraud, a felony, when he should have been indicted for odometer tampering, which was a misdemeanor at the time. He does not contend that the indictment fails to charge or set out an offense, but contends that the government is proceeding under the wrong statute.

Moreover, Oldfield's concession at the hearing on his motion that it was untimely clearly indicates that the motion was considered to be one raising a defect in the indictment, not a motion seeking dismissal for the failure of the indictment to charge an offense. If the motion was not one that was required to be brought pursuant to 12(c), Oldfield would not have conceded its untimeliness below.

Finally, to determine whether or not a motion seeking dismissal because of a defect in the indictment must be brought pursuant to 12(c), the purpose behind Rule 12 must be considered. As one commentator has noted:

[The] provision sharply restricts the defense tactic of "sandbagging" that was available in many jurisdictions under common law pleading. Recognizing that there was a defect in the pleading, counsel would often forego raising that defect before trial, when a successful objection would merely result in an amendment of the pleading. If the trial ended in a conviction, he could then raise the defect on a motion in arrest of judgment and obtain a new trial. Federal Rule 12 eliminated this tactic as to all objections except the failure to show jurisdiction or to charge an offense.

2 W. LaFave and J. Israel, *Criminal Procedure* § 19.2, at 442 (1984).

As Oldfield contends only that the government is proceeding under the wrong statute, not that the indictment fails to set out any offense, the alleged defects could have been cured by an amendment to the indictment had the defects been timely raised. Conversely, had Oldfield contended that the indictment failed to set out *any* offense, then it is arguable that the defect could not have been cured by amendment of the indictment. Thus, the purpose and

policy of Rule 12 is clearly enhanced by its application in this context. In any event, we fail to see any prejudice to Oldfield in light of the district court's instruction to the jury that misdemeanor odometer tampering was a lesser included offense of mail fraud.

■ Assuming, *arguendo*, that the issue was timely raised, we find Oldfield's contentions to be wholly without merit. Initially, we note that prosecution of individuals who use the mails to carry out or further an odometer tampering scheme is far from a novel approach. *See e.g., United States v. Henson*, 848 F.2d 1374 (6th Cir. 1988); *United States v. Townsend*, 796 F.2d 158 (6th Cir.1986). *See also, United States v. Schmuck*, 840 F.2d 384, 385–86 (7th Cir.) (en banc), *cert. granted*, —— U.S. ——, 108 S.Ct. 1727, 100 L.Ed.2d 192 (1988); *United States v. Locklear*, 829 F.2d 1314 (4th Cir.1987) (per curiam); *United States v. Fallon*, 776 F.2d 727 (7th Cir. 1985); *United States v. Lindsey*, 736 F.2d 433 (7th Cir.1984); *United States v. Galloway*, 664 F.2d 161 (7th Cir.), *cert. denied*, 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1981); *United States v. Shryock*, 537 F.2d 207 (5th Cir.1976), *cert. denied*, 429 U.S. 1100, 97 S.Ct. 1123, 51 L.Ed.2d 549 (1977). Thus, we are not inclined to agree with Oldfield that although his conduct may violate the mail fraud statute, the odometer tampering statute applies exclusively to all odometer offenses, even if the use of the mails is involved.

In support of his position, Oldfield contends that when both a felony statute (mail fraud) and a misdemeanor statute (odometer tampering at the time of his offense) proscribe certain actions, the rule of lenity requires the government to proceed only under the misdemeanor statute. However, it first should be noted that the two statutes are not mirror images of each other, as the odometer tampering statute does not require a showing that the mail was used to carry out the offense. As the Seventh Circuit has recognized, "[e]ach statute requires proof of facts not required by the other. The two offenses are separate." *Schmuck*, 840 F.2d at 386. Thus, every

occurrence of odometer tampering is not automatically an occurrence of mail fraud. If one engages in odometer tampering alone, then he cannot be charged with mail fraud. If, on the other hand, he also engages the mails to carry out the fraudulent scheme of odometer tampering, then the mail fraud statute should be available to the government.

Moreover, it is quite clear that the decision "[w]hether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion." *United States v. Batchelder*, 442 U.S. 114, 124, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979). In fact, this court has explicitly rejected the "contention that when both a felony statute and a misdemeanor statute proscribe the defendant's actions, the prosecutor may only proceed under the misdemeanor statute." *United States v. Schaffner*, 715 F.2d 1099, 1102 (6th Cir.1983). We held in *Schaffner* that:

> There is no general rule of lenity which requires the government to forego a felony prosecution simply because a misdemeanor statute may also be applicable. "When the same conduct is prohibited by two penal statutes, the government may proceed under either and the defendant may not complain if the government elects to proceed under the harsher one."

*Id.* (quoting *United States v. Hamel*, 551 F.2d 107, 113 (6th Cir.1977)); *see also United States v. Armijo*, 834 F.2d 132, 136 (8th Cir.1987) ("[w]hen an act violates more than one criminal statute, the government may prosecute under either, and the decision is generally a matter of prosecutorial discretion. This rule is not changed by the circumstance that one of the applicable statutes is general and the other specific." (citation omitted)), *cert. denied*, —— U.S. ——, 108 S.Ct. 1297, 99 L.Ed.2d 507 (1988).

Finally, we have thoroughly reviewed the legislative history of the Truth in Mileage Act of 1986, P.L. 99–579, which increased the penalty for any violation of federal odometer laws and regulations to a felony, and we are not left with the conclusion that Congress intended that the odometer tam-

pering laws and regulations be the exclusive means of prosecuting individuals who engage in odometer tampering. *See* S.Rep. No. 47, 99th Cong., 2d Sess., *reprinted in* 1986 U.S. Code Cong, & Admin. News 5620–27. The legislative history relied upon by Oldfield does not indicate that Congress intended odometer tampering to be prosecuted only under the Motor Vehicle Information and Cost Savings Act. Rather, Congress intended to close loopholes created by the six states which at that time did not have a place for odometer information on their vehicle titles by requiring that odometer disclosures be made on specific types of records, and by requiring that all states require written disclosure of the odometer reading on a motor vehicle's title at the time of transfer of ownership and when the new owner attempts to register the vehicle. Thus, the legislation enhanced both the civil and criminal penalties for violations of the Act to make violations more threatening to violators. We find no language in the Act indicating that Congress intended the odometer tampering legislation to be the sole means of prosecuting individuals engaged in odometer tampering.

The fact that two different criminal statutes arguably apply to the same conduct does not require this court to apply the doctrine of implied repeal and hold that one is the exclusive means of prosecuting the conduct in question. As the Ninth Circuit has recognized:

> [t]he fact that there are two criminal statutes applying to exactly the same criminal conduct, and one provides a different penalty from the other, does not create "irreconcilable conflict" to support a claim of implied repeal. It merely brings into play the rule that the government has the election of which statute it will charge.

*United States v. Edmonson,* 792 F.2d 1492, 1498 (9th Cir.1986) (citations omitted), *cert. denied,* 479 U.S. 1037, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987). Therefore, even if we were to consider this issue as properly preserved for appeal, we find Oldfield's position to be wholly without merit.

### B. *Sufficiency of Evidence*

■ Claiming that there is insufficient evidence to support the jury's verdict, Oldfield contends that (1) no use of the mails occurred in furtherance of the fraudulent scheme because the scheme was completed prior to the mailings in question; (2) the mailings of the titles to the consumers/purchasers were not essential to the scheme as the mailings would have occurred regardless of his fraudulent conduct; and (3) the mailings were detrimental to the fraudulent scheme in that they invited discovery of the scheme and therefore could not be in furtherance of the scheme. Oldfield does not contest that the evidence at trial established that automobile odometers were rolled back at his direction and participation nor that Ohio titles were fraudulently prepared by Tilford falsely showing that the automobiles' mileage when obtained by Oldfield was consistent with the rolled back automobile odometers. Moreover, Oldfield does not contend that the evidence fails to establish that each automobile was sold by Oldfield Used Cars by way of false representation as to the automobile's true mileage.

In *United States v. Gallo,* 763 F.2d 1504 (6th Cir.1985), *cert. denied,* 474 U.S. 1068, 106 S.Ct. 826, 88 L.Ed.2d 798 (1986), we reiterated our limited standard of review when reviewing claims challenging the sufficiency of evidence. We held that:

> In addressing the sufficiency of the evidence, this court does not sit as a trier of fact in a *de novo* trial. Rather, the standard of review for claims of insufficient evidence is:
>
>> whether after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 1518 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 56 (1979) (emphasis in original)). All reasonable inferences will be drawn in the prosecution's favor. *United States v. Tilton,* 714 F.2d 642, 645 (6th Cir.1983) (per curiam).

A conviction for mail fraud requires proof of three elements:

(1) devising or intending to devise a scheme to defraud (or to perform specified fraudulent acts);

(2) involving a use of the mails; and

(3) for the purpose of executing the scheme or attempting to do so.

*See Henson,* 848 F.2d at 1378; *United States v. Castile,* 795 F.2d 1273, 1277–78 (6th Cir.1986). The principal question in this appeal is whether there is sufficient evidence, viewing the evidence in the light most favorable to the prosecution, upon which any rational trier of fact could have found that Oldfield used the mails in furtherance of his fraudulent scheme; *viz.,* odometer tampering.

The Supreme Court has made it clear that "[w]here one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used." *Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–363, 98 L.Ed. 435 (1954). "[T]he defendant does not himself have to have dropped the letter in the mail. Mail fraud only requires that the defendant reasonably anticipate, or as a reasonable person foresee, the use of the mails." *United States v. Davidson,* 760 F.2d 97, 99 (6th Cir.1985). "[T]he mailings need not be 'false' to be in furtherance of a scheme to defraud." *Henson,* 848 F.2d at 1378–79 (quoting *United States v. Benny,* 786 F.2d 1410, 1420 (9th Cir.), *cert. denied,* 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986)). "The mailings may be innocent or even legally necessary." *United States v. De-Castris,* 798 F.2d 261, 263 (7th Cir.1986). As long as a mailing is prior to fruition of the fraudulent scheme, it "will support a conviction even if it follows the defendant's fraudulent acts, or occurs after the schemers have obtained the victim's money or goods." *United States v. Bonansinga,* 773 F.2d 166 (7th Cir.1985) (citations omitted), *cert. denied,* 476 U.S. 1160, 106 S.Ct. 2281, 90 L.Ed.2d 723 (1986). In sum, the "mailing need only be closely related to the scheme and reasonably foreseeable as a result of the defendant's actions." *United States v. Silvano,* 812 F.2d 754, 760 (1st Cir.1987); *see United States v. Green,* 786 F.2d 247, 249 (7th Cir.1986) (mailings are adequate if they are "an expectable part of a larger scheme.").

In the present case, we conclude that there is sufficient evidence upon which a jury could find that the mailings were in furtherance of Oldfield's odometer tampering scheme. The evidence clearly established that Oldfield was an experienced used car dealer who was well-acquainted with the paper work generated by automobile sales. Specifically, he was familiar with the titling and reassignment of titles to vehicles and the procedure employed by the State of Kentucky. Indeed, his knowledge of the titling process is underscored by the fact that he participated in the bribery of a county clerk in Ohio to fabricate titles showing false mileage and directly prepared documents for purchasers so that title could be obtained in their names or in the names of subsequent purchasers. In our view, "[t]he transfer of title is a necessary step in the sales transaction, which [is] not actually completed until the title papers [are] processed." *Shryock,* 537 F.2d at 209; *see also Lindsey,* 736 F.2d at 437; *Galloway,* 664 F.2d at 164. We do not agree with Oldfield's contention that the fraudulent scheme was completed prior to the mailings in question.

Oldfield contends that the fraudulent scheme ended when the consumers purchased the automobiles. However, the title documents mailed from the State of Kentucky to the consumers were necessary for the consumers to perfect title in the purchased automobiles. Thus, in our view, the scheme did not reach fruition until the retail customers had actually received title from the state. The fact that Oldfield received money before the mailings is of no consequence. The testimony at trial clearly established that a consumer in Kentucky does not have a perfected title in the automobile until the state verifies the information provided in the applications and sends the consumer a title through the mail.

Oldfield claims that in Kentucky, ownership of the vehicle passes upon delivery of the automobile and accompanying documents to the purchaser. He claims that Kentucky is not a "certificate of title" state, and, therefore, possession of a new certificate of title is not essential to transfer ownership of an automobile. He relies upon the Kentucky Supreme Court's decision in *Motors Ins. Corp. v. Safeco Ins. Co.*, 412 S.W.2d 584 (Ky.1967), wherein the buyer of an automobile was involved in an automobile collision with his new car the evening after purchase, but before titling was complete. The Supreme Court held that under Kentucky's version of the Uniform Commercial Code, title passed at the time and place of delivery and rejected the argument that the buyer was not the owner of the new automobile until the title papers had been delivered. Oldfield also relies upon *Amburgey v. Potter*, 477 S.W.2d 786 (Ky.1972), another insurance case, wherein the court held that compliance or noncompliance with the Kentucky statute requiring that the buyer obtain a new certificate of title is not conclusive of ownership and that the failure of the buyer to pick up the bill of sale until nine days after delivery of the car did not operate to continue the liability of the seller for the operation of the automobile by the buyer after delivery.

In our view, however, the above two holdings are inapposite to the situation presented in this appeal. For the purposes of liability, title may pass from the car dealer to the purchaser at the time of purchase. However, while the purchaser may be liable for any injuries that he causes while using the automobile, he does not possess all the incidents of ownership until he obtains a certificate of title from the state. In the present case, even though title may have passed under the Uniform Commercial Code's provisions, there is no doubt but that a purchaser would return the automobile to Oldfield or any other seller seeking a refund if the State of Kentucky would not issue a certificate of title on the car because of odometer tampering. Therefore, it was necessary and vital to Oldfield's fraudulent scheme that the State of Kentucky issue a certificate of title to the purchasers. It was not until that moment that the fraudulent scheme reached fruition, and any mailings that took place that were reasonably related to the scheme prior to that point in time can serve as a basis for a mail fraud conviction.

Oldfield also relies upon the Supreme Court's holding in *United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), in support of his contention that the mailings were detrimental to his fraudulent scheme in that they invited discovery of the scheme and, therefore, could not be in furtherance of it. In *Maze*, the defendant took his roommate's "Bank Americard" credit card and used it to obtain goods and services. The mailings in that case occurred when the businesses mailed receipt invoices to the card issuer. The Court held that the mailings in question were simply between the victims and in no way furthered the scheme of the defendant; *i.e.*, the fraudulent receipt of goods and services. Moreover, the Court found that the mailings in fact increased the probability that the defendant would be caught and, therefore, could not be found to be in furtherance of the scheme.

In the present case, however, unlike *Maze*, ownership was not complete until the purchase was reviewed by the state. The nature of a transaction involving the sale of a used automobile is clearly distinguishable from the situation involved in *Maze* which involved the purchase of ordinary goods and services.

Relying upon *Parr v. United States*, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960), Oldfield's final contention is that since the mailings in question were legally required by state law, there could be no mail fraud unless the mailings themselves were false and fraudulent. In *Parr*, the Court held that where the government charged mail fraud in connection with the mailing of a tax return, the indictment had to specifically charge that the tax returns were themselves false and fraudulent, as the tax returns were required by law to be mailed without respect to whether any fraudulent scheme ever existed.

However, this case is clearly distinguishable. In *Parr*, whether there had been a

fraud or not, the mailings would have occurred because the individuals were required by law to submit a tax return. In the present case, as shown by the record, the automobiles would not have been purchased by the various consumers had the odometers not been "rolled back." Therefore, the mailings involved in this case would not have occurred had Oldfield not fraudulently "rolled back" the odometers, because, according to their testimony, the various consumers would not have been induced to purchase the automobiles in question. Unlike *Parr*, the mailings here occurred as a result of the fraudulent scheme. Indeed, the fact that state law requires the mailings in question further underscores our conclusion that Oldfield knew or reasonably should have known that the mails would be used by consumers who purchased the automobiles in question. *See* Ky.Rev.Stat.Ann. §§ 186A.065 and 186A.170 (Michie/Bobbs–Merrill Supp. 1986).

### III.

Accordingly, for the foregoing reasons, the judgment of the district court is AFFIRMED in all respects.