884 F.2d 580
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael W. ALLEN, Defendant-Appellant, (88-6145),
Ralph G. Mitchell, Defendant-Appellant, (88-6165).
 No. 88-6145, 88-6165.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1989.
 
 Before NATHANIEL R. JONES and MILBURN, Circuit Judges, and SAM H. BELL, District Judge*.
 PER CURIAM.
 
 
 1
 Defendants-appellants Michael Allen and Ralph Mitchell appeal their various narcotics convictions. For the reasons that follow, we affirm.
 
 I.
 
 2
 On June 8, 1988, a federal grand jury returned a four-count superseding indictment against Allen, Mitchell, and Eddie Lewis. The superseding indictment charged defendants in Count I with conspiracy to distribute cocaine, 21 U.S.C. Sec. 846; in Count II with possessing cocaine with the intent to distribute it, 21 U.S.C. Sec. 841(a)(1); in Count III with using a firearm in connection with a drug trafficking crime, 18 U.S.C. Sec. 924(c)(1); and Count IV, which related solely to Mitchell, charged that he possessed a separate quantity of cocaine with the intent to distribute it. Lewis subsequently pleaded guilty to the conspiracy charge and testified for the government at trial.
 
 
 3
 On May 20, 1988, Allen filed a motion for severance pursuant to Rules 8 and 14 of the Federal Rules of Criminal Procedure. He urged the court to sever his trial from that of his codefendants because of the probability of jury confusion, his need of exculpating testimony from his codefendants, and the possibility of "spillover" of his codefendants' guilt. On June 10, 1988, the district court denied the requested severance.
 
 
 4
 Subsequently, on June 27, 1988, Mitchell filed a motion adopting all of the pretrial motions previously filed in the case, including Allen's motion for severance. In an order dated July 7, 1988, the district court overruled Mitchell's motion for severance.
 
 
 5
 Trial began on July 19, 1988, and continued through July 21, 1988. The district court denied both appellants' motions for judgment of acquittal. The jury ultimately found Mitchell guilty on all four counts. Allen was convicted on Counts I and II, but was acquitted on the weapons charge of Count III. Mitchell and Allen were sentenced on October 4, 1988, and each filed a timely notice of appeal to this court.
 
 
 6
 At approximately 5:00 p.m. on April 26, 1988, Detective Walker Webb of the Lexington Police Department responded to a "shots-fired" complaint in the vicinity of Grinstead and Race Streets in Lexington's inner city. The radio dispatch indicated the suspect in question might be operating a blue, late model Jaguar.
 
 
 7
 Webb ultimately located such a car and ascertained that Mitchell was sitting in the trunk of the car. Webb then observed Mitchell remove something from his pocket and toss it to the ground. He subsequently learned that what Mitchell had tossed to the ground were three packets, two containing cocaine and the other containing marijuana. While Mitchell was standing by the trunk, Webb instructed him to place his hands on the car, and when he did, the trunk lid closed. Webb then asked Mitchell to open the trunk, and Mitchell placed a key in the lock but claimed that he was unable to open it, stating that he did not have the correct key. Webb then placed Mitchell under arrest and confiscated $2,927.00 from his person.
 
 
 8
 After Mitchell had been placed under arrest, but prior to being put into the police cruiser, Betty Miller and Angela Moore, Mitchell's girl friend, approached Webb and informed him that Mitchell had fired a shot at Moore. At the trial, there was testimony that several persons were present at the scene and that several persons were trying to get to Mitchell. Police officers on the scene testified that they observed Lewis attempt to speak with Mitchell, but that he was unsuccessful in his attempt. However, Lewis testified that he spoke with Mitchell on two occasions and that Mitchell asked him to retrieve the car or have Ray Dixon, Moore's cousin, do so. Webb testified that Lewis asked him for custody of the car, but he advised Lewis that the car was to be impounded. Mitchell testified, however, that he did not ask Lewis to retrieve the car, that he did not know Lewis very well, and that he only asked Lewis if he had seen Moore. The car was subsequently towed to Bluegrass Towing, and Mitchell gave consent to a search of the car.
 
 
 9
 Lewis testified that he went searching for Ray Dixon as requested by Mitchell. He testified that he found Dixon and Allen riding in a car on Jefferson Street and that they already were aware of Mitchell's arrest. The three drove to Bluegrass Towing's service lot and inquired as to the amount of the fee to get the car released. Lewis testified that Dixon paid the attendant the fee, but that the attendant would not release the Jaguar until Dixon presented him with a bill of sale or other proof of ownership. Lewis further testified that the three then left the tow lot office and that he and Dixon walked down the stairs from the office while Allen remained on the stairs by the office door.
 
 
 10
 Lewis stated that Dixon, in a voice loud enough for Allen to hear, offered to pay Lewis $500.00 to remove a bag from the trunk of the Jaguar. At that point, Allen went to the Jaguar, which was located about thirty feet from the tow lot office, took the keys from the ignition, opened the trunk, removed a gym bag, put a gun into the bag, and then gave it to Lewis, stating, "Here, go with it. Go." Lewis indicated Allen made the statement because he saw a police cruiser approaching. When the police cruiser pulled up, Lewis attempted to flee by running through the railroad yard, but he was apprehended after traveling only a short distance.
 
 
 11
 Lexington Detective Pete Push participated in the chase and arrest of Lewis. He took initial custody of the gym bag where Lewis dropped the bag when he stopped and surrendered. Push testified that the bag was open and that he could see a handgun and a quantity of suspected cocaine. When examined, the firearm was loaded with a round in the chamber. In the bag were twenty-nine individual packets which were tested and identified as containing cocaine. While in custody, Lewis gave a statement implicating Allen in the retrieval of the bag from the trunk of the Jaguar.
 
 
 12
 While Allen did not testify, he called a number of witnesses in an effort to discredit and impeach the testimony of Lewis. Lexington Police Officer Bryan Sinclair testified that he first saw Lewis some twenty-five feet from the Bluegrass Towing office with Allen sitting inside the fence. Sinclair testified that as he rounded the corner and came into view of the tow lot, he saw Lewis walking away carrying a blue bag and that Lewis was approximately twenty-five to thirty feet from the entrance to the tow lot office. Sinclair also testified that when he questioned the tow lot attendant, Kenneth Herron, Herron stated that Lewis had been the individual in the Jaguar. Sinclair further testified that a one-armed wrecker driver for Bluegrass Towing, later identified as Espie Traylor, had advised him that Allen and Lewis were together and that they both had been in the Jaguar. Sinclair also testified that Allen was in possession of the tow receipt upon his arrest.
 
 
 13
 Ray Dixon was called by Allen to contest Lewis' testimony. Dixon denied any knowledge of the cocaine in the car and stated that he told Allen to get the receipt for the tow bill.
 
 
 14
 Espie Traylor testified that he was working at Bluegrass Towing on April 26, 1988. He further testified that he did not see anyone enter the Jaguar and that he did not tell Officer Sinclair that he saw Allen or anyone else enter the Jaguar.
 
 
 15
 Kenneth Herron testified that he was radio dispatcher on duty at Bluegrass Towing on the date in question. He testified that three black men came into his office and inquired if they could get the Jaguar out of the tow lot. Herron testified that he did not know or recognize them, had not seen them except for the date of the incident, and knew the names Allen and Lewis solely by virtue of the conversation at his office.
 
 
 16
 Herron testified that Dixon paid the tow bill and departed while Herron wrote up a receipt. He testified that he gave the receipt to "Eddie Lewis" and that "Lewis" went to the Jaguar while "Allen" waited at the steps and remained there at all times. Herron also testified that the man he saw walking up the street was the same man who descended the stairs and went in the direction of the Jaguar. However, Herron admitted that he did not see anyone actually get in the vehicle, because the office set-up did not provide a complete view of the area near the Jaguar. Finally, Herron testified that he would not dispute Detective Keith Howard's assertion that on May 23, 1988, he had stated that the smaller of the two males went to the car. By comparison of Lewis and Allen in the presence of the jury, the district judge stated for the record that Lewis was a little taller than Allen.
 
 
 17
 Unlike Allen, Mitchell did take the stand and testify in his own behalf. He denied any knowledge of the cocaine and the revolver found in the gym bag with Lewis at the time of Lewis' arrest, and also denied that the cocaine and revolver had been in the trunk of the Jaguar. However, he admitted that the cocaine and marijuana found by Detective Webb on the ground at the time of his arrest were his cocaine and marijuana. He testified that he did not intend to sell or distribute the drugs and that he intended to consume the drugs entirely himself.
 
 
 18
 The small bags of cocaine that Mitchell threw from his pockets at the site of the arrest contained 15.34 grams of 56.6 percent cocaine and 1.8 grams of 79.6 percent cocaine. There was testimony that the cocaine seized in the gym bag from Lewis was packaged in twenty-nine separate plastic bags totaling 747.9 grams of 53.9 percent cocaine.
 
 
 19
 Narcotics Detective Howard testified that the cocaine was packaged in a manner consistent with packaging for distribution and that the cocaine was worth between $75,000 to $150,000. Howard also testified that the trunk key to the Jaguar was on Mitchell's key ring which had been taken into custody, but that opening the trunk required a simultaneous use of the key and a hand latch.
 
 
 20
 The United States introduced evidence that Mitchell had paid approximately $16,000 in cash for the 1984 Jaguar in question only three days before his arrest. Finally, Lewis testified that he personally knew Mitchell, Allen, and Ray Dixon to be involved in the distribution of cocaine.
 
 
 21
 On appeal Allen and Mitchell contend that the district court erred (1) in overruling their motions for severance; and (2) that there is insufficient evidence to support their convictions. In addition, Allen contends that the federal guidelines under which he was sentenced by the district court are unconstitutional.
 
 II.
 A.
 
 22
 Initially, with regard to the denied motions for severance, we hold that the defendants have failed to preserve this issue for appellate review. In United States v. Swift, 809 F.2d 320, 323 (6th Cir.1987), this court held, in "a prospective ruling affecting cases tried after January 1, 1987, ... that a severance motion will be deemed waived if it is not renewed at the end of the evidence." As the Seventh Circuit has recently explained, a defendant is required to renew his motion for severance at the close of evidence "because it is then that any prejudice which may have resulted from the joint trial would be ascertainable." United States v. Brown, 870 F.2d 1354, 1360 (7th Cir.1989). In this case, neither of the defendants renewed their motions for severance as required by this court's holding in Swift. Accordingly, this issue has not been preserved for appellate review.
 
 B.
 
 23
 In United States v. Gallo, 763 F.2d 1504, 1518 (6th Cir.1985), cert. denied, 475 U.S. 1017 (1986), we reiterated our limited standard of review when reviewing claims challenging the sufficiency of evidence to support a criminal conviction. We held that:
 
 
 24
 In addressing the sufficiency of the evidence, this court does not sit as a trier of fact in a de novo trial. Rather, the standard of review for claims of insufficient evidence is:
 
 
 25
 "Whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."
 
 
 26
 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in originals)). "All reasonable inferences will be drawn in the prosecution's favor." United States v. Oldfield, 859 F.2d 392, 399 (6th Cir.1988). Circumstantial evidence is entitled to the same weight as direct evidence in determining sufficiency, Holland v. United States, 348 U.S. 121, 139-40 (1954), and "the uncorroborated testimony of an accomplice may support a conviction under federal law." Gallo, 763 F.2d at 1518.
 
 
 27
 Allen contends on appeal that there is no evidence from which to establish beyond a reasonable doubt that he knowingly and willfully became a member of any conspiracy, or knowingly participated in any act forbidden by law. He contends that the only evidence implicating him was the testimony of Lewis and that this testimony, even when viewed in the light most favorable to the government and drawing all inferences consistent with the verdict, does not support his conviction.
 
 
 28
 Allen relies on Lewis' testimony that on the way to Bluegrass Towing, no one mentioned anything about getting a bag out of the Jaguar. Lewis testified that he, not Allen, was asked by Dixon to retrieve the bag from the trunk. Allen contends that even if Lewis' testimony is credited with regard to Allen's going to the car and retrieving the bag, there is no evidence that Allen knew the bag contained cocaine. When this is coupled with Lewis' lack of credibility, Allen contends that there is insufficient evidence to support his two convictions.
 
 
 29
 However, as indicated above, this court must accept Lewis' testimony as credible when reviewing the sufficiency of evidence. As earlier stated, Lewis testified that he personally knew Allen and Mitchell to be associated in the distribution of cocaine. He testified that Dixon and Allen took Lewis to the tow yard, that Dixon offered $500.00 to Lewis to remove the bag from Mitchell's car in Allen's presence, that Allen went to the car first, removed the bag, placed the gun in it, and then gave it to Lewis with instructions to leave the area. There is a strong inference that Allen knew what was in the bag and would have seen what was in the bag when he placed the gun inside it. Moreover, when Allen saw a police cruiser approaching, he handed the bag to Lewis and instructed him to leave the area. Accordingly, we hold that there is sufficient evidence from which a jury could draw the inference that Allen knew what was in the bag and was involved in the indicted conspiracy.
 
 
 30
 Although Mitchell does not contest the sufficiency of evidence to support his conviction for possession of cocaine found at the time of his arrest, he contends that the evidence is insufficient with regard to the other three counts. He contends that the evidence is as consistent with the theory of innocence as it is with the theory of guilt.
 
 
 31
 However, the record indicates that Mitchell was observed in possession of two small packets of cocaine and nearly $3,000.00 in cash shortly before Lewis was apprehended in the act of retrieving similar packets of cocaine from the car Mitchell had in his possession at the time of his arrest. The government established that Mitchell purchased the Jaguar only a few days prior to his arrest with about $16,000.00 in cash. Moreover, Lewis testified that he personally knew Mitchell, Allen, and Dixon to be associated in the distribution of cocaine and testified that Mitchell told him to inform Dixon that the car had been impounded. There was also testimony that Mitchell was sitting in the trunk where the bag and weapon were found at the time of his arrest and that he subsequently closed the trunk and claimed to be unable to open it.
 
 
 32
 Thus, although Mitchell attempts to impeach Lewis and offered evidence and testimony designed to contradict his testimony, the credibility of the witnesses is clearly within the province of the jury and not a reviewing appellate court. In our view, when the evidence and credibility of the witnesses is construed in favor of the verdict, there is sufficient evidence to support Mitchell's convictions.
 
 C.
 
 33
 The final issue before this court is Allen's contention that the guidelines promulgated by the United States Sentencing Commission pursuant to the Sentencing Reform Act of 1984, as amended, 28 U.S.C. Secs. 991-98, under which he was sentenced, are unconstitutional. However, in a holding subsequent to the filing of Allen's brief, the United States Supreme Court has rejected that argument and held the guidelines to be constitutional. Mistretta v. United States, 109 S.Ct. 647 (1989).
 
 III.
 
 34
 The judgments of the district court are AFFIRMED in their entirety.
 
 
 
 *
 Honorable Sam H. Bell, United States District Judge, Northern District of Ohio, sitting by designation