NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0475n.06
Filed: June 30, 2006

Case No. 04-3056

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| ANTONIO ROBERTSON, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| | ) | |

BEFORE:  SILER, BATCHELDER and GIBBONS, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Appellant, Antonio Robertson ("Robertson"),

appeals his conviction for conspiracy to possess with intent to distribute cocaine and marijuana, in

violation of 21 U.S.C. §§ 841(a)(1) and 846. Robertson argues that an unauthorized communication

between one of the jurors and a county deputy sheriff during the court proceedings deprived him of

a fair trial. After a hearing on the matter, the district court denied Robertson's motion for a mistrial,

but granted his motion to dismiss the juror. The jury then convicted Robertson for his role in

conspiring – over a period of some twenty years – to obtain more than 100 kilograms of cocaine and

over 10,000 pounds of marijuana. The jury also returned a special finding that Robertson had

possessed 5 or more kilograms of cocaine and less than 50 kilograms of marijuana. On December

22, 2003, the district court sentenced Robertson under the Guidelines. Robertson timely appealed

his conviction and sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

Because the district court did not abuse its discretion in denying Robertson's mistrial motion, we AFFIRM the judgment of the district court. In light of the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005), and our holding in *United States v. Barnett*, 398 F.3d 516 (6th Cir. 2005), we vacate Robertson's sentence and remand the case to the district court for resentencing.

**I.**

During the trial, defense counsel informed the district court that Robertson had learned that a Lucas County sheriff's deputy had told a juror, later identified as Tracey Mulligan ("Mulligan"), that Robertson was in custody in the county jail during the proceedings. Immediately upon hearing the allegation, the court questioned Mulligan outside the presence of the other jurors. Mulligan denied having a conversation about the case with anyone from the Sheriff's Office. She acknowledged, however, that she did have contact with her friend, Toni Jackson ("Deputy Jackson"), a Lucas County deputy sheriff.

Mulligan knew Deputy Jackson as a part-time security guard at a local supermarket where Mulligan is employed. The two women spoke in the lobby of the county jail two days prior to the court's inquiry into the unauthorized conversation. As Deputy Jackson and Mulligan were talking about amusement parks and movie rentals, a second deputy, Dionne Waters ("Deputy Waters"), approached the two women and began talking. Both deputies were in uniform and Mulligan wore a juror tag.

2

In response to the district court's questioning, Mulligan recalled her encounter with the deputies and explained that Deputy Waters had asked her which case she was hearing. Mulligan said that both she and Deputy Jackson told Deputy Waters that Mulligan could not discuss it. Mulligan explained that Deputy Waters then "just left it alone" and began talking about hair care products. The court asked whether defendants Villanueva or Robertson were ever named, and Mulligan said that neither name had been mentioned.

After hearing Mulligan's explanation, the court offered defense counsel the opportunity to question Mulligan, but counsel opted to hear from Deputy Jackson first, so as not to risk tainting the juror. The court instructed Mulligan not to discuss the matter with any other jurors. The court then conferred with counsel and called Deputy Jackson to testify about the unauthorized conversation.

Deputy Jackson, a nine-year county sheriff veteran, transports prisoners to and from court. She testified that she and Mulligan were talking about a movie when Deputy Waters approached. Deputy Jackson introduced Deputy Waters to Mulligan. Noticing her juror tag, Deputy Waters asked if Mulligan was a juror. Deputy Jackson confirmed that Mulligan was a juror, and she testified to the following:

> [Deputy Waters] started asking [Mulligan], are you on such-and-such case? I can't recall the guy's name. I told her yes, but she can't disclose any information to you, she's not allowed . . . . She's not allowed to talk about it. And at that point, [Mulligan] never said a word. So [Deputy Waters] continued to say things like, well, this defendant was such-and-such, and he's back for this, what floor he was on and who all –

The court interrupted: "what did you just say? Back up. The defendant was such-and-such?"

Deputy Jackson answered:

> I can't recall what she said his name was because I'm not familiar with the name. [Deputy Waters] was talking kind of fast. And she said they were going to bring some other guy back for that or something. And she [was] just kind of going on and

3

on. [Mulligan] and I just stood there and looked at her, and we weren't going to say anything because [Mulligan] already knew she couldn't say anything regarding the case.

When asked if Deputy Waters had said anything else, Deputy Jackson replied:

[Deputy Waters] was going on and on about [how] she knew whose case [Mulligan] was on anyway. She said the guy's name, and that's the case they were going to bring someone else back for, and something about some other guy was in fear for his life, and was just going on and on.

The court then asked if Deputy Waters could recall any other specifics of the conversation, and Waters replied: "No. Then she started asking Tracy about her hair color because her hair is almost the same color."

Deputy Jackson was unsure whether Deputy Waters mentioned the last name "Robertson," but she testified that Deputy Waters indicated that the man who was on trial was being held on her floor at the county jail. Robertson's attorney, Mr. Boyk, questioned Deputy Jackson about where the conversation had occurred, what Deputy Waters may have said, and whether Deputy Jackson and Mulligan had ever discussed the conversation again. Deputy Jackson testified that she had no doubt that Mulligan heard what Deputy Waters had said, but speculated that "she probably didn't understand it or have any recollection of what she was talking about." The Government had no questions, and the court dismissed Deputy Jackson with instructions not to discuss her testimony or the unauthorized conversation with anyone.

After questioning Mulligan and Deputy Jackson, the trial judge allowed defense counsel to confer among themselves and then told them that he would excuse Mulligan if they requested. In the alternative, the judge offered to question Mulligan further and confirm that nothing that Deputy Waters said had "registered" with Mulligan. The court was persuaded that this was in fact the case, but offered to question the juror again if the defense preferred. The court noted that it appeared that

4

Deputy Waters, whom the court had yet to hear, had acted improperly, and that she also would need to be questioned. The court then offered the possibility – although "not indicating that this would be preferable" – that defense counsel might choose to question Mulligan again, inform her that Robertson is in custody, and ask her if that will in any way affect her judgment or ability to try him fairly. The court recessed the proceedings to allow defense counsel to consider its options.

When the court reconvened, Mr. Boyk moved for a mistrial. The court denied the motion and explained:

> [T]here will be a specific finding that both these witnesses were testifying truthfully. I had occasion to observe the demeanor of the juror. She did not appear to be apprehensive. I don't think she understood what was going on, but that's a part of the desire in this situation. And important details about the hair rinse and so forth, that's all I think she remembered; that's all that she recalled. And she said that she did not talk to anybody about the conversation, and I believe her absolutely. I find no difficulty in squaring the accounts of both women, both of whom I believe testified absolutely and without any qualification whatsoever truthfully. So . . . I don't believe this juror has been tainted with knowledge of Mr. Robertson's custody, and I likewise don't think there's any basis for concluding that the jury group as a whole has been tainted.

Mr. Boyk then moved to dismiss Mulligan from the jury, and the court granted the motion. Mulligan's dismissal left an all-Caucasian jury.

Neither the trial court nor defense counsel heard from Deputy Waters prior to dismissing Mulligan. The record indicates that the court later charged Deputy Waters with contempt of court for her improper conduct. At the contempt hearing, Deputy Waters' attorney stated that he had interviewed Robertson, Mulligan, and Deputy Jackson, and that Deputy Waters admitted to the alleged conduct and accepted the court's finding her in contempt. The court then chastised Deputy Waters and fined her $1000 for her conduct. It was during this rebuke that the court made the following remarks on which Robertson's appeal heavily relies:

5

But if you hadn't acted the way that you did in complete derogation of the rights of this defendant to have the fact of his custodial status entirely concealed and kept secret from the jury, he would not have been put to that choice [to dismiss or retain Mulligan]. And that was a terrible choice. It was one he made, and I am sure that he was able to make it with the advice of counsel, but it is a choice in his situation I would never want to face. He sat for this entire proceeding as the only African-American in this courtroom.

The jury convicted Robertson and the trial judge sentenced him to 360 months under the then-mandatory federal Sentencing Guidelines. The parties do not dispute that at the time of sentencing the Sentencing Guidelines were mandatory and that the court sentenced Robertson accordingly. At sentencing, the court stated that it believed the sentence of 360 months was far too severe for Robertson, and that it would be "inclined to give . . . a sentence a good bit less than 360 months," but because the court's discretion was severely limited by the Guidelines, it could not. Robertson appeals both the denial of his mistrial motion and his sentence under the Sentencing Guidelines.

## II.

### A.

Robertson argues that the district court abused its discretion when it denied his motion for a mistrial. We disagree.

In *United States v. Pennell*, 737 F.2d 521 (6th Cir. 1984), we held that a trial court's decision not to grant a mistrial after investigating allegations of unauthorized contact with jurors may be reviewed only for an abuse of discretion. *Pennell*, 737 F.2d at 533. Under this deferential standard, we will overturn the district court's ruling only if that ruling was arbitrary, unjustifiable, or clearly unreasonable. *See Hardyman v. Norfolk*, 243 F.3d 255, 267 (6th Cir. 2001). According to *Pennell*, "the burden of proof rests on a defendant to demonstrate that unauthorized communications with

6

jurors resulted in actual juror partiality. Prejudice is not to be presumed." *Pennell*, 737 F.2d at 532. *Pennell* followed the Supreme Court's recognition in *Smith v. Phillips*, 455 U.S. 209 (1982), that the remedy for allegations of juror partiality is a hearing during which the defendant is entitled to be heard. *See Phillips*, 455 U.S. at 215.

Here, the district court properly and promptly held a hearing regarding the allegations and, after hearing the testimony of the juror and one of the deputies, denied the mistrial motion. Robertson has made no showing that Mulligan's unauthorized communication resulted in actual juror partiality. Indeed, the court remedied the possibility of juror partiality when, after first determining that no other jurors were aware of the unauthorized communication, it dismissed Mulligan. To the extent that Robertson's brief on appeal might be construed even to suggest jury partiality, he does not direct our attention to any evidence to support such a suggestion. Upon learning of the unauthorized communication, the district court and defense counsel agreed to question the juror to "see what she knows." The court immediately held a hearing on the matter and allowed defense counsel to question the parties involved. The court then considered the defense motions, made findings of fact, correctly applied the law, and granted the defendant's request to dismiss Mulligan. Although we agree with the district court that the unauthorized communication placed Robertson's counsel in the unenviable position of having to choose between keeping a juror with extra-judicial information and dismissing the only African-American on the jury, we conclude that Robertson has not demonstrated the kind of actual juror prejudice that would entitle him to any relief. Accordingly, we hold that the trial court did not abuse its discretion in denying the motion for a mistrial.

7

The real substance of Robertson's argument on appeal is that the trial was unfair because of the composition of his jury and the difficult choice his counsel was forced to make. This is in fact an untimely, back-handed challenge to the venire. He argues that Mulligan was tainted by the extra-judicial information she acquired, and because the district court denied Robertson's mistrial motion, the defense team had to make a "terrible choice" between retaining Mulligan and dismissing the only African-American juror. According to Robertson, the trial was "unfair" after the court granted the motion to dismiss Mulligan because Robertson then "sat for the entire proceeding as the only African-American in the courtroom." In arguing for a mistrial, Robertson's counsel noted that "there were 108 jurors in this jury poll [*sic*] . . . . [with only] two black jurors. One was dismissed for cause – he had other activities he had to go to."

After investigating the circumstances of Mulligan's communication with the deputies, the court stated that it would do whatever it could to satisfy and best serve Robertson's interest. Noting that the court recognized the difficult choice imposed on the defense as a result of the unauthorized communication, Robertson contends that it was "unreasonable and unjustifiable" for the court to deny the motion for a mistrial because the denial of that motion ineluctably led to Robertson's second motion, which was to dismiss Mulligan. This, he contends, had the "unfair" effect of leaving Robertson as the only minority in the courtroom, warranting a mistrial. We disagree.

The district court directly addressed the possibility that Robertson was attempting to challenge to the composition of the venire after the trial was underway. The court noted that "[t]o the extent that you are contending that the venire is under-represented, I think that motion is untimely. And if that was being asserted, it will be overruled." The court did not explain the basis

for its conclusion, but Robinson had not challenged the venire prior to trial and our decision in

*United States v. Ovalle*, 136 F.3d 1092 (6th Cir. 1998), supports the district court's ruling.

> Federal Rule of Criminal Procedure 12(b)(2) provides that "[d]efenses and objections based on defects in the indictment or information . . ." must be raised prior to trial. Federal Rule of Criminal Procedure 12(b)(2) governs an untimely claim of discrimination in the selection of the grand jury, "even when such challenges are on constitutional grounds." *Davis v. United States*, 411 U.S. 233, 238, 93 S.Ct. 1577, 1581, 36 L.Ed.2d 216 (1973) (citing *Shotwell Mfg. Co. v. United States*, 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963)). "Challenges of the petit jury are treated the same as challenges of the grand jury." *United States v. Hearst*, 638 F.2d 1190, 1196 (9th Cir.1980) (citing *Shotwell Mfg. Co.*, 371 U.S. at 362, 83 S.Ct. at 460-61), *cert. denied*,451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981).

*Id.* at 1107. Thus, *Ovalle* determined that "[f]ailure to raise an objection to the selection of the grand

or petit jury prior to trial 'shall constitute waiver thereof, but the court for cause shown may grant

relief from the waiver.' Fed.R.Crim.P. 12(f); *see also United States v. Oldfield*, 859 F.2d 392, 396

(6th Cir.1988)." *Id*. Robertson's counsel did not pursue the under-representation claim at trial, or

provide the district court with good cause to permit the untimely challenge. Rather, this is simply

a situation in which a hard choice had to be made after a proper jury selection.

Beyond the tardiness of Robertson's challenge to the jury pool, we find that he has failed to

demonstrate that the unauthorized communication resulted in actual juror prejudice, and we hold that

the trial court did not abuse its discretion in refusing to grant a mistrial.

**B.**

The pre-sentence report calculated Robertson's base offense level at 36 and adjusted it to 37

because it found that Robertson was a career offender pursuant to USSG § 4B1.1(A). The statutory

minimum sentence for a violation of 21 U.S.C. § 841(a)(1) is 20 years. With an offense level of 37

and a Criminal History Category VI, Robertson's sentencing range under the then-mandatory federal

Sentencing Guidelines was 360 months to life. On December 22, 2003, the district court sentenced

Robertson to 360 months imprisonment and 10 years of supervised release. The parties do not dispute that at the time of sentencing the federal Sentencing Guidelines were mandatory and that the court sentenced Robertson according to the Guidelines. The district court stated that it considered the 360-month sentence "far too severe" for Robertson, and that it would be "inclined to give . . . a sentence a good bit less than 360 months." In light of our holdings in *United States v. Barnett*, 398 F.3d 516 (6th Cir. 2005) and *United States v. Hamm*, 400 F.3d 336 (6th Cir. 2005), we vacate Robertson's sentence and remand this case to the district court for resentencing.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of conviction, and vacate Robertson's sentence and remand the case to the district court for resentencing.