UNITED STATES of America,
Plaintiff-Appellee,

v.

Dean LINDSEY, a/k/a Raymond Dean
Lindsey, Defendant-Appellant.

No. 83–1703.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 2, 1983.

Decided June 13, 1984.

---

John J. Casey, Casey & Casey, Springfield, Ill., for defendant-appellant.

Patrick J. Chesley, Asst. U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and MAROVITZ, Senior District Judge.*

MAROVITZ, Senior District Judge.

Appellant, Dean Lindsey, appeals from a six count conviction for mail fraud, 18 U.S.C. § 1341.[1] Lindsey allegedly devised and carried out a scheme to defraud automobile dealers and consumers by exchanging Illinois vehicle titles containing the letters "S.V." (salvage vehicle) for Missouri titles which did not contain any notation that the vehicles had previously been salvaged. He then sold the vehicles, apparently without informing the purchasers that the cars had been salvaged, and thereby received an inflated price for them. On appeal, Lindsey contends that: 1) the District Court erred in ruling that the Illinois statute requiring the "S.V." designation on the certificate of title was for the purpose of protecting consumers and that a concealment of the "S.V." by circumventing the law was fraud as to possible subsequent consumers; and 2) the court erred in ruling that the compulsory mailing of certificates of title by the Secretary of State's Office satisfied the mailing requirement of the mail fraud statute. After a full review of the record, we find Lindsey's arguments to be without merit and therefore affirm the convictions.

*The Honorable Abraham Lincoln Marovitz, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1. 18 U.S.C. § [34] (1980) states:
   Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security or other article, or anything represented to be or intimated

*Facts*

The basic facts of this case are not in dispute. Illinois law requires a certificate of title to bear the initials "S.V." when a salvage certificate has previously been issued on the vehicle. Ill.Rev.Stat., 1981, ch. 95½ ¶ 3.118.1. A salvage certificate is generally issued to an insurance company which has paid a total loss claim on a wrecked automobile. In addition, the Illinois Secretary of State's Office sends a post card to any consumer who is issued a title with "S.V." on it explaining that the automobile purchased is a salvaged vehicle. Because consumers are generally wary of purchasing salvaged vehicles, used car dealers usually will not pay as much for a car with a title marked "S.V."

Lindsey was a licensed automobile rebuilder. He purchased six automobiles which had previously been wrecked and for which a salvage certificate had been issued to the insurance company that had paid out a total loss on the cars. Lindsey then rebuilt the cars and applied for and received Illinois certificates of title marked with the initials "S.V." in the upper left corner. Because it was easier and more profitable to sell cars without the "S.V." designation, Lindsey engaged a Mr. James P. Leigh to exchange the Illinois titles for Missouri titles. Missouri law did not require any designation that the automobile had previously been salvaged. Lindsey paid Leigh $50.00 for each "clean" title he obtained. The evidence disclosed that Leigh obtained 5 Missouri titles and 1 Kentucky title, none of which had any indication that the automobile had previously been salvaged. The cars were never actu-

or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing shall be fined not more than $1,000 or imprisoned not more than five years, or both.

ally sold to Leigh or physically taken to Missouri. Rather, the title was signed over to Leigh who then got a title service company to take the titles to Missouri and get a title in his name. Leigh then signed the Missouri title back to Lindsey. All of the cars were eventually sold to Illinois residents. All of the purchasers applied for and received Illinois titles through the mail.

Two of the cars were sold at an auto auction in Missouri. One of those cars was announced as being rebuilt. The other was not announced as either rebuilt or salvaged and the purchaser testified that had he known that the car was rebuilt he would not have bought it. There is no dispute that cars that have an "S.V." designation on the title sell for $500.00 to $1,000.00 less than they would without the "S.V." on the title.

Lindsey also sold two of the six cars to Richard Wagoner, Sr., who runs an automobile dealership in Springfield, Illinois. Lindsey told Wagoner that the cars had been repaired, but not that they had been salvaged or rebuilt. Wagoner testified that had he known that the vehicles had been salvaged, he would not have paid as much as he did for them because consumers are reluctant to buy salvaged cars. Of the remaining two cars, one was sold to Lindsey's cousin, and one was sold to another Illinois dealer. The evidence was unclear as to whether these purchasers were aware that the cars had been salvaged.

The jury found Lindsey guilty on all six counts of mail fraud. The trial Judge sentenced Lindsey to 3 years probation and ordered him to make restitution to any of 6 possible purchasers of the cars. At the sentencing, the judge indicated that he did not think that any of the persons who actually bought the cars from Lindsey had been defrauded, but that Lindsey had made it possible for them to defraud subsequent purchasers because the subsequent purchasers would be deprived of the Secretary of State's notice explaining the meaning of the "S.V." on the title. Therefore the direct purchasers could charge more for the cars when they sold them because the subsequent purchasers would never receive notice that the cars were salvaged. Lindsey places great emphasis upon this statement by the judge and if there had been a bench trial such emphasis might be correctly placed. But a jury acted as the finder of fact in this case and as will be seen later, there was sufficient evidence for the jury to find that the direct purchasers of Lindsey's cars were in fact harmed.

### Purpose of the "S.V." Designation

Lindsey's first argument is somewhat unclear. He presented a great deal of evidence at trial and especially in post-trial motions to establish the purpose of the Illinois statute requiring the "S.V." designation. According to Lindsey, the statute was originally drafted as an anti-theft measure and was not directed at consumer protection. In its original state, the bill called for the title to designate that the car had been "rebuilt". The rebuilders association opposed this because they felt that it put them in a competitive disadvantage because consumers would be afraid to buy cars marked as rebuilt even though they were no different than cars that had been wrecked and rebuilt by the owner but never turned over to an insurance company and thus were never issued salvage certificates. To accommodate the rebuilders, the legislation was altered to include the "S.V." on the title rather than "rebuilt" because it was agreed that few consumers would understand the meaning of the letters "S.V.". However, after the bill was passed, the Secretary of State's Office, on its own, decided to send a post card to each consumer who purchased a car that had been salvaged. The post card explained the meaning of the "S.V." designation on the title. As a result of this notice, salvaged vehicles tend to sell at lower prices, and it was this notice that Lindsey was ultimately seeking to avoid by removing the "S.V." from his titles. Lindsey appears to be arguing that because he did not violate the intended purpose of the statute, and in fact did not violate any law of Illinois or Missouri, he cannot be found guilty of mail fraud. Although it does not ulti-

mately matter, it is not clear from the record that Lindsey is correct in his assertion that the trial judge actually ruled that the purpose of the statute was for consumer protection. Finally, it also appears, at least from his counsel's statement at oral argument, that Lindsey is arguing that there was insufficient evidence to convict him because the trial judge indicated at the sentencing that all of the persons who purchased the cars directly from Lindsey knew the cars were salvaged and that it was only potential future purchasers that could have been defrauded.

■ A brief review of the elements of the crime of mail fraud illustrates the weaknesses in Lindsey's arguments. The mail fraud statute condemns any scheme to defraud in which the mails are used. *United States v. Melton*, 689 F.2d 679 (7th Cir.1982); *United States v. Frick*, 588 F.2d 531, 536 (5th Cir.1979). "The statute does not merely forbid the use of the mails to perpetrate an act made criminal by state or federal law; it reaches any plan, consummated by the use of the mails, in which artifice or deceit is employed to obtain something of value with the intention of depriving the owner of his property." *United States v. Kreimer*, 609 F.2d 126, 128 (5th Cir.1980). Moreover, the scheme is not to be measured by technicalities. Rather, the measure of fraud is its departure from moral uprightness, fundamental honesty, fair play and candid dealings in the general life of members in society. *Id.*

■ Viewed against this background, the fallacies of Lindsey's argument become readily apparent. While the purpose of a statute is always of interest, and may have a dispositive effect in cases where a violation of the statute is charged, for purposes of this appeal the intent of the statute requiring the "S.V." designation has little or no relevancy since a conviction for mail fraud is not predicted upon a violation of any state or federal law. Lindsey himself admitted that the reason he removed the "S.V." was so that he could sell his cars more easily and for more money. They sold for more money because the purchas-ers were deprived of the knowledge that the car was salvaged. The government was not required to prove that Lindsey intended to violate the purpose of the statute; rather, the government had only to prove that he intended to deceive potential purchasers of his cars.

The issue of intent is clearly a question of fact and as such we do not conduct an independent review of the facts, but only analyze the evidence presented at trial to determine if it was sufficient to support the jury's finding. Although the evidence presented was conflicting, there clearly was sufficient evidence for the jury to determine that Lindsey had the requisite intent to deceive. Floyd Hauhe, owner of the auto auction in Missouri where two of the cars were sold, testified that when he told Lindsey that he would have to sell the cars as rebuilt, Lindsey withdrew the cars rather than sell them on those terms. Lindsey later returned and managed to sell one car without announcing that it was rebuilt or salvaged. Ken Whaley, the purchaser of the car, testified that had he known that the car had been salvaged he would not have paid as much as he did. Lindsey also sold two cars to Richard Wagoner who testified that he was not told that the cars had been rebuilt or salvaged and that had he known he would not have paid the price he did.

■ Lindsey's argument that there was insufficient evidence to convict him, based upon the trial judge's statement that all those who purchased directly from Lindsey were told that the cars were repaired and that only potential purchasers could have been defrauded, must also fail. First, as indicated above there was sufficient evidence for the jury to determine that at least two direct purchasers were in fact harmed. Second, it is not essential that the government allege or prove that purchasers were in fact defrauded, because *it is only a scheme to defraud* that is required to violate the law. *United States v. Melton*, 689 F.2d 79, 684 (7th Cir.1982); *United States v. Reid*, 533 F.2d 1255, 1261 (D.C.Cir.1976). Further, Lindsey's argu-

ment is based upon a narrow view of the scope of the scheme. There is no question that Lindsey contemplated that those direct purchasers who were used car dealers would resell the cars at a higher price because of the lack of the "S.V." on the title and the fact that the purchaser would therefore not receive the post card from the Secretary of State. Thus, the dealers would pay Lindsey more for the car even if they knew it was rebuilt because they knew the extra cost could be passed on to subsequent purchasers. Consequently, regardless as to whether the direct purchasers were injured, Lindsey's scheme contemplated injury to subsequent purchasers. *See United States v. Galloway*, 664 F.2d 161 (7th Cir.1981). Lindsey affirmatively acted to conceal relevant and material information from purchasers of his cars (either direct or indirect) in order to obtain an inflated price. This is clearly covered by the mail fraud statute and we therefore hold that the evidence was sufficient for the jury to conclude that Lindsey had the intent to deceive both the actual and potential purchasers of his cars.

### Sufficiency of the Mailings

Lindsey's second main contention on appeal is that the mailing of the Illinois titles by the Secretary of State to the purchasers of his cars was insufficient to satisfy the mailing requirement of the mail fraud statute. The statute requires that the mailing be made "for the purpose of executing ... [a] scheme" to defraud. 18 U.S.C. § 1341. Lindsey argues that assuming there was a scheme to defraud, it had reached fruition prior to the mailing of the titles by the Secretary of State, and that even if the scheme had not reached fruition, the mail fraud statute may not be invoked because the mailings were legally compelled. *See Parr v. United States*, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1959).

The mail fraud statute is written so as to apply to any scheme to defraud in which the mails are used. It is therefore read expansively to effectuate that purpose. *United States v. Boyd*, 606 F.2d 792 (8th Cir.1979). Thus, while the statute requires that the mailing occur for the purpose of executing a scheme to defraud, courts have generally given a broad interpretation to this phrase and have held that mailings in furtherance of the scheme fulfills the requirement. *United States v. Keane*, 522 F.2d 534, 544 (7th Cir.1975), *cert. denied*, 424 U.S. 976, 96 S.Ct. 1481, 47 L.Ed.2d 746 (1976). For a mailing to be in furtherance of a scheme, all that is required is that the defendant commit an act with knowledge that the use of the mails will follow in the ordinary course of business, or commit an act where the use of the mails can reasonably be foreseen. *United States v. McManigal*, 708 F.2d 276, 278–80 (7th Cir.), *vacated on other grounds*, —— U.S. ——, 104 S.Ct. 419, 78 L.Ed.2d 355, *reaffirmed on other grounds*, 723 F.2d 580 (7th Cir.1983). Lindsey admitted that it was reasonably foreseeable that Illinois purchasers of his cars would apply for and receive titles through the mail. Further, it is clear that the final step in Lindsey's scheme is the issuance of a title without the "S.V." designation, thereby concealing from both the direct and subsequent purchasers that the car had been salvaged. We thus conclude that the mailings in the instant case were sufficient to satisfy the requirements of the mail fraud statute. This holding is consistent with our decision in *United States v. Galloway*, 664 F.2d 161 (7th Cir.1981), *cert. denied*, 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982), which involved a scheme to defraud by rolling back automobile odometers. The mailing involved there was the mailing of title applications by the automobile dealer on behalf of the purchaser. We held that the mailing of the title documents was necessary to the completion of the scheme. *See also United States v. Shryock*, 537 F.2d 207 (5th Cir.1976), *cert. denied*, 429 U.S. 1100, 97 S.Ct. 1123, 51 L.Ed.2d 549 (1976) (where sale to retail customer is the final object of a scheme to defraud, mailing of documents of title necessary to complete the sale are made for the purpose of executing the scheme).

Finally, Lindsey's reliance on *Parr v. United States, supra,* for the proposition that legally compelled mailings cannot form the basis of a mail fraud conviction is misplaced. The mailings in *Parr* were totally unrelated to, and in fact predated the scheme to defraud. In the instant case as in *Galloway* and *Shryock,* the mailings were tied to an essential step in the scheme, for if the ultimate purchaser of the car did not receive a clean title, the scheme would fail.

### Conclusion

We conclude that Lindsey's scheme to defraud falls within the prohibitions of the mail fraud statute, and that there was sufficient evidence to support the conviction. We therefore affirm.

AFFIRMED.