882 F.2d 1249
 14 Fed.R.Serv.3d 808, RICO Bus.Disp.Guide 7287
 Thomas REYNOLDS and Ruthann Reynolds, Plaintiffs-Appellants,
v.
EAST DYER DEVELOPMENT COMPANY, 545 Service Corporation,
Citizens Development Corporation, Home Owners Warranty
Corporation, Andrew J. Kopko, Individually and as a Trustee
under Trust dated January 12, 1977, John Doe and Jane Doe,
the unknown beneficiaries of a Trust Dated January 12, 1977,
Defendants-Appellees.
 No. 88-2802.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 19, 1989.
Decided Aug. 17, 1989.
 
 David M. Austgen, Robert E. Stochel, O'Drobinak, Stochel and Austgen, Crown Point, Ind., for plaintiffs-appellants.
 Mark E. Schmidtke, Larry G. Evans, Hoeppner, Wagner & Evans, Valparaiso, Ind., for defendants-appellees.
 Before FLAUM and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 MANION, Circuit Judge.
 
 
 1
 Citizens Development Corporation (Citizens), a subsidiary of Citizens' Federal Savings and Loan of Matteson, Illinois, and 545 Service Corporation (545), a subsidiary of First Federal Savings and Loan of Gary, Indiana, formed a joint venture called the East Dyer Development Company (East Dyer) to develop a residential subdivision known as Castlewood Subdivision in Dyer, Indiana. The Castlewood properly was held in a land trust, with Andrew J. Kopko as trustee. Thomas Jacobs sold lots in Castlewood, and generally managed the subdivision.
 
 
 2
 In the summer of 1982, Thomas and Ruthann Reynolds were looking for a new home or a site to build a new home. The Reynolds found out about Castlewood, visited the subdivision, and noticed a model home that interested them. The Reynolds eventually made a contingent offer to buy the home from its builder, Waggoner Builders, Inc. (Waggoner Builders, Inc. was owned by Ken Waggoner; we will refer to the corporation as Waggoner Builders, and to Ken Waggoner as Waggoner). The contingency did not come to pass, however, and the deal fell through.
 
 
 3
 The Reynolds were still interested in obtaining a house in Castlewood, and eventually agreed to allow Waggoner to build a house similar to the model house. Waggoner contracted with East Dyer to buy lot 96 in Castlewood as the home site. The Reynolds then contracted with Waggoner to purchase the completed house and lot.
 
 
 4
 While digging the foundation for the Reynolds' home, Waggoner encountered soft soil that was not suitable for building. Waggoner then investigated to determine if there was any other soft soil where he was going to lay the home's foundation, and found no more bad spots. Waggoner explained the problem to Mr. Reynolds, telling him that he could cure the problem by digging out the soft soil and filling the hole with rock. Mr. Reynolds, satisfied with Waggoner's explanation of the problem, allowed Waggoner to continue with construction.
 
 
 5
 After Waggoner Builders finished building the Reynolds' home, East Dyer deeded lot 96 to Waggoner Builders. Waggoner Builders then immediately deeded lot 96 and the completed home to the Reynolds. But all was not well. Shortly after moving into the home, the Waggoners began to experience problems with the home (for example, cracks in the walls). There is evidence in the record to support an inference that soft soil under the foundation caused the defects in the Reynolds' house.
 
 
 6
 The Reynolds filed a suit against various defendants (including the defendants in this case) in state court in Indiana. In 1987, while the state case was pending, the Reynolds sued East Dyer, 545, Citizens, Kopko, and John and Jane Doe (the unknown beneficiaries of the land trust) for treble damages in federal court, under RICO, 18 U.S.C. Sec. 1964. The federal suit also alleged various state-law claims.[1] The Reynolds alleged that the defendants received reports of soil boring tests that showed that sixteen lots in Castlewood, including lot 96, had soil unsuitable for building, and that the defendants committed fraud by not disclosing the report before selling lot 96.
 
 
 7
 The Reynolds' original complaint alleged RICO violations in two counts. The district court dismissed that complaint, with leave to amend, holding that the first RICO count failed to allege any predicate offenses, and that the second RICO count did not meet Fed.R.Civ.P. 9(b)'s requirement that the complaint particularly set forth the circumstances constituting fraud, or allege any pattern of racketeering activity. Having dismissed the RICO counts, the district court dismissed the pendent state-law claims as well. Additionally, the court ordered Rule 11 sanctions against the Reynolds' attorney, John M. O'Drobinak. According to the court, the complaint "made no semblance of compliance with Rule 9(b);" therefore, the "only reasonable conclusion" the court could draw was that O'Drobinak did not investigate the law regarding civil RICO pleading before filing the complaint.
 
 
 8
 The Reynolds filed an amended complaint, in which they attempted to beef up their RICO allegations. But even the amended complaint left much to be desired. For one thing, the amended complaint was woefully unclear about what the enterprise was, and about the defendants' conduct relating to the enterprise. For another, the amended complaint neglected to mention exactly what section of RICO the defendants allegedly violated. These two details are related, and important. The essence of a RICO violation is a defendant's conduct in relation to an enterprise. 18 U.S.C. Sec. 1962(a) makes it unlawful to invest income derived from a pattern of racketeering in an enterprise. Section 1962(b) makes it unlawful to acquire or maintain an interest in an enterprise through a pattern of racketeering activity. And Section 1962(c) makes it unlawful to conduct or participate in an enterprise's affairs through a pattern of racketeering activity. Moreover, the different RICO sections require plaintiffs to prove different things. For example, under Sec. 1962(c), the plaintiff must show that the enterprise and the defendant are different entities; under Sec. 1962(a), however, the defendant may be the enterprise. Haroco, Inc. v. American National Bank and Trust Co. of Chicago, 747 F.2d 384, 400-02 (7th Cir.1984), aff'd, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). Thus, it is essential to plead precisely in a RICO case the enterprise alleged and the RICO section allegedly violated. As the district court noted, these pleading deficiencies were inexcusable in light of the original complaint's dismissal for lack of specificity and the accompanying Rule 11 sanctions.
 
 
 9
 The district court, however, did not dismiss the amended complaint for failing to allege adequately the enterprise and the RICO section the Reynolds were suing under. The court treated statements in the Reynolds' response to the defendants' summary judgment motion as amendments to the complaint; consequently, the court treated the Reynolds' suit as one under Sec. 1962(c), and considered the enterprise to be an "association in fact" between all the defendants, see 18 U.S.C. Sec. 1961(4). (The Reynolds seem to accept these conclusions, so we do too.) But the district court went on to grant summary judgment for the defendants on a number of different grounds, which we need not catalogue. The Reynolds appeal, but we agree with the district court that summary judgment was appropriate.
 
 
 10
 First, we do not think the Reynolds have shown any racketeering activity in this case. RICO defines racketeering activity as a violation of a long list of federal and state laws. See 18 U.S.C. Sec. 1961(1). This list includes mail and wire fraud, and the Reynolds contend that the defendants violated RICO by engaging in a series of mail and wire frauds. However, to show that somebody committed mail or wire fraud, a plaintiff must show a "scheme or artifice to defraud" within the meaning of those statutes. See 18 U.S.C. Secs. 1341 and 1343.
 
 
 11
 The Reynolds have not alleged or shown that the defendants lied to them--or anybody else--about soil conditions in Castlewood. This case, then, essentially involves a failure by the defendants to disclose the results of the soil boring reports to the Reynolds (and some other buyers) before selling lots to them. The Reynolds allege that this was unethical conduct, failing " 'to match the reflection of moral uprightness, of fundamental honesty, fair play and right feeling in the general and business life of the members of society,' " and thus constitutes fraud for purposes of the wire and mail fraud statutes. Blachly v. United States, 380 F.2d 665, 671 (5th Cir.1967); see also United States v. Lindsey, 736 F.2d 433, 436 (7th Cir.1984); United States v. Keplinger, 776 F.2d 678, 698 (7th Cir.1985).
 
 
 12
 This circuit, however, has cautioned that the broad language in cases like Blachly and Lindsey "cannot have been intended, and must not be taken literally." United States v. Holzer, 816 F.2d 304, 309 (7th Cir.1987), vacated on other grounds, 484 U.S. 807, 108 S.Ct. 53, 98 L.Ed.2d 18 (1987). Not all conduct that strikes a court as sharp dealing or unethical conduct is a "scheme or artifice to defraud." Id.; see also United States v. Dial, 757 F.2d 163, 170 (7th Cir.1985). Given the pervasive use of the mails and of telephone and related services in the business world, along with the ease of satisfying the mailing or wiring requirement, see, e.g., Schmuck v. United States, --- U.S. ----, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989), such a broad meaning of fraud for the mail and wire fraud statutes "would put federal judges in the business of creating what in effect would be common law crimes, i.e., crimes not defined by statute." Holzer, 816 F.2d at 309.
 
 
 13
 The Reynolds have not cited any cases in which mere failure to disclose, absent something more, was held to be fraud under the mail and wire fraud statutes, even in spite of the broad language some of those cases use. See, e.g., Keplinger, 776 F.2d at 697-99 (noting that not every nondisclosure of relevant information constitutes mail fraud; in that case, omissions occurred in the context of "a wide variety of deceptive actions"); Lindsey, 736 F.2d at 434-36 (defendant took affirmative step to conceal that cars were rebuilt by exchanging Illinois titles, which showed the cars were rebuilt, for Missouri titles, which did not); United States v. O'Malley, 707 F.2d 1240, 1247 (11th Cir.1983) (in an "intangible rights" case, defendant, a former Florida Insurance Commissioner, violated a state-law duty not to receive gifts or compensation from insurance companies for rendering services); United States v. Beecroft, 608 F.2d 753, 755-57 (9th Cir.1979) (defendant made affirmative misrepresentations and deceitful statements of half-truths, along with omissions). The Reynolds have not shown that the defendant made any affirmative misrepresentations--to them or other buyers--about the soil conditions at Castlewood, or any other misstatements or statements of half-truths that could be said were calculated to deceive buyers about the soil conditions. The Reynolds do point to some general statements Jacobs made to them--for example, that Castlewood was a fine place to build and was a luxury subdivision--but these statements are no more than common sales puffing, do not relate to soil conditions, and have not even been shown to be false or misleading.
 
 
 14
 Nor have the Reynolds shown the type of "elaborate attempt at concealment" that this court emphasized existed in Holzer and Dial when we upheld mail and wire fraud convictions in those cases. See Holzer, 816 F.2d at 309; Dial, 757 F.2d at 170. To the contrary, the undisputed facts show that the defendants submitted the soil reports to the Dyer town officials, and the reports thus were a matter of public record; the defendants would have given anything in their files (including the soil reports) to anybody who asked; and builders would likely find out about any soil problems and be able to cure the problems (after all, the builders had to dig foundations for the homes). This is hardly the type of active or elaborate concealment found in the cases affirming mail and wire fraud convictions.
 
 
 15
 The Reynolds claim, however, that the defendants had a duty to disclose the soil reports under Indiana law. In Jordan v. Talaga, 532 N.E.2d 1174 (Ind.App.1989), the Indiana Court of Appeals held that a real estate developer who knew about a latent defect in land violated an implied warranty of habitability when it sold the land to a home builder without disclosing the defect. See id. at 1182-86. But Jordan did not purport to impose a blanket duty of disclosure on all developers; the court held that under the circumstances of that case, particularly in light of the developers' experience and expertise, it was appropriate to impose liability under an implied warranty. The Reynolds have not argued how the facts in Talaga compare to the facts here. But beyond that, we do not think Talaga helps the Reynolds. In Dial, the defendants, commodities brokers, had an unquestioned fiduciary duty to disclose their activities (in that case, trading ahead of their customers in the futures market). See 757 F.2d at 168. Yet we questioned whether the defendants' activity in Dial would violate the wire fraud statute absent the "elaborate efforts" the defendants made to conceal their actions. Id. at 170; see also Holzer, 816 F.2d at 309.
 
 
 16
 To us, the Reynolds' citation to Jordan underscores the problem with the scheme to defraud they have alleged. The defendants here took no active or elaborate steps to conceal the soil reports, nor was the failure to disclose part of a larger pattern of lies or half-truths. The Reynolds essentially ask us to make it a federal crime to breach a state-law warranty of habitability--a warranty (or, as the Reynolds call it, a duty) that even not all states might impose in the circumstances here. See Jordan, 532 N.E.2d at 1183-84 (discussing Illinois cases). The Reynolds are asking us to do what Holzer cautioned against, that is, to create a common-law crime. Without more than what the Reynolds have shown, we do not think that the defendants' actions here violated the mail or wire fraud statutes.[2]
 
 
 17
 Even if the Reynolds could show a pattern of racketeering activity, they still had to show that their damages resulted "by reason of" the defendants' RICO violation. 18 U.S.C. Sec. 1964(c). In other words, the Reynolds had to show that the criminal conduct that violated RICO must have proximately caused their injury. Haroco v. American National Bank, 747 F.2d at 398; Brandenburg v. Seidel, 859 F.2d 1179, 1189 (4th Cir.1988). The district court held, however, that the defendants' omissions did not proximately cause the Reynolds' damages. This was so, according to the court, because the undisputed facts showed that the Reynolds found out about the soil problems from Waggoner but told Waggoner to go ahead and build the home.
 
 
 18
 Civil RICO is a statutory tort, so causation principles that generally apply in tort cases apply in civil RICO cases. Brandenburg, 859 F.2d at 1189. Generally, a person who discovers the truth may not claim that a defendant's misrepresentation or omission of information harmed him. See, e.g., Agfa-Gevaert, A.G. v. A.B. Dick Co., 879 F.2d 1518, 1520 (7th Cir.1989); Peterson Industries, Inc. v. Lake View Trust and Saving Bank, 584 F.2d 166, 168-69 (7th Cir.1978); cf. Teamsters Local 282 Pension Trust Fund v. Angelos, 762 F.2d 522, 529-30 (7th Cir.1985) (in securities fraud action under SEC regulation 10b-5, plaintiff may not rely on misrepresentations when he has sufficient information to call the misrepresentation into question). The Reynolds claim they would not have bought the lot and the house, and would not have suffered damages, if the defendants had told them about the soil reports. But their actions (at least as the district court saw the undisputed facts) belie this assertion; even after finding out about the soil problem from Waggoner, they told him to go ahead and fix the soil problem as he recommended and build the house.
 
 
 19
 The Reynolds have responded to the district court's holding that they could not show causation by ignoring it. The Reynolds' opening brief gives no hint that any causation problem exists. The brief does not even mention the factual problem here (Waggoner's discovery of a soil problem and his communication of the problem to the Reynolds), much less argue the legal significance of those facts. The brief does not even acknowledge the district court's holding that the Reynolds could not establish causation. And even after the defendants in their response specifically noted the causation problem raised by Waggoner's discovery of the soft soil, the Reynolds failed to acknowledge that problem in their reply brief.
 
 
 20
 Since causation was essential to the Reynolds' RICO claim, the district court's holding that they could not show causation was a sufficient reason, by itself, to grant summary judgment for the defendants. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). The Reynolds should have challenged that holding; they did not. Ignoring a sufficient ground the district court relied on to grant summary judgment is no way to argue for reversing that judgment. This court is not obliged to comb the record without guidance looking for facts that might call the district court's holding into question, or to conduct the legal research necessary to construct an argument from those facts. See Sanchez v. Miller, 792 F.2d 694, 703 (7th Cir.1986). Since the district court's holding that the Reynolds could not show causation was sufficient reason to support summary judgment for the defendants, and since the Reynolds have not attempted to refute either the factual or legal bases for that holding, we may affirm the summary judgment on that basis. And since the district court properly granted summary judgment on the RICO claims, it was proper for the court to dismiss the pendent state claims. See United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).
 
 
 21
 That leaves one other issue, but that issue requires little discussion. The Reynolds purport to appeal the Rule 11 sanctions awarded against their attorney. They cannot do that. The attorney, John M. O'Drobinak, is the real party in interest, and must appeal in his own name. Rogers v. National Union Fire Ins. Co., 864 F.2d 557, 559-60 (7th Cir.1988). O'Drobinak has not filed a separate notice of appeal in this case, and the Reynolds' notice of appeal did not name him as an appellant. Therefore, we have no jurisdiction to decide whether the district court properly awarded Rule 11 sanctions. Id.
 
 
 22
 For the reasons stated above, we affirm the district court's grant of summary judgment for the defendants, and dismiss the part of the appeal challenging the sanctions against the Reynolds' attorney.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 The Reynolds also sued Home Owners Warranty Corporation (HOW), but only on various state-law claims. The district court found that pendent-party jurisdiction over the Reynolds' claims against HOW did not exist and dismissed those claims. The Reynolds and HOW have apparently settled their dispute; in any event, the Reynolds' claims against HOW are not before us on this appeal
 
 
 [2]
 The Reynolds mention in their reply brief that there is evidence that the defendants sold lots to builders such as Waggoner, rather than directly to home buyers such as the Reynolds, to evade the Interstate Land Sales Full Disclosure Act, which the Reynolds assert would have required the defendants to disclose the soil problems. We will not consider this argument for a number of reasons. First, the Reynolds did not make this argument in their opening brief, and it is improper to present new arguments in a reply brief. Secon Service Systems, Inc. v. St. Joseph Bank & Trust, 855 F.2d 406, 411-12 (7th Cir.1988). Second, the Reynolds did not present this argument in the district court. See United States v. Turner, 864 F.2d 1394, 1401 (7th Cir.1989). Finally, the Reynolds did not even cite the Interstate Land Sales Full Disclosure Act, or cite to any authority interpreting or explaining the Act, leaving us to thumb through the United States Code unaided to check their argument's accuracy. See Fed.R.App.P. 28 (argument must cite appropriate authority)