Edward A. **CARALUZZI** and Pamela E. Caraluzzi, on their own behalf and on behalf of all other persons similarly situated, Plaintiffs,

v.

**PRUDENTIAL SECURITIES, INC., Defendant.**

No. 92 C 1389.

United States District Court, N.D. Illinois, E.D.

May 26, 1993.

Herbert Beigel, Cary Neal Goldberg, Ronald Alan Schy, Beigel & Sandler, Chicago, IL, for plaintiffs.

Miriam Goldman Bahcall, Timothy Alan Nelsen, Donna L. McDevitt, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for defendant.

## MEMORANDUM AND ORDER

JAMES B. MORAN, Chief Judge.

Plaintiffs Edward Caraluzzi and Pamela Caraluzzi (the Caraluzzis) filed this action against defendant Prudential Securities, Inc. (Prudential) under the RICO statute, 18 U.S.C. § 1961, *et seq.* Plaintiffs claim that the monthly client statements sent to them by defendant misrepresented, or omitted to state, the true value of certain limited partnership and other direct investments. In addition, plaintiffs allege common law claims for breach of fiduciary duty, fraud and negligent misrepresentation, and statutory consumer fraud claims under the laws of the states of New York, Illinois, Texas, Connecticut and California. This court has both pendent and diversity jurisdiction over the Caraluzzis' state law claims. Before us now is defendant's motion for dismissal. For the reasons stated below, defendant's motion is granted.

### *FACTS*

In or about September 1986 plaintiffs, as joint tenants, purchased through defendant 1,250 limited partnership units in Summit Tax Exempt L.P. II (Summit II) at $20.00 per unit, for a total purchase price of $25,000. In addition, in or about September 1986 Pamela Caraluzzi, individually, purchased through defendant 1,250 units in Summit II at $20.00 per unit, for a total purchase price of $25,000. In or about June 1987 plaintiffs jointly purchased through defendant 1,250 limited partnership units in Summit Tax Exempt L.P. III (Summit III) at $20 per unit, for a total purchase price of $25,000. At approximately that time Pamela Caraluzzi, individually, purchased from defendant 500 units in Summit III at $20.00 per unit, for a total purchase price of $10,000. Prudential acted as the broker for the syndication of Summit II and Summit III and, according to plaintiffs, was also acting as plaintiffs' financial advisor.

The Caraluzzis bring this action on behalf of themselves and all other residents of the United States who purchased limited partnerships and other direct investments through Prudential. The Caraluzzis allege that beginning in or about 1981, and continuing to the present, the defendant acted as a broker and advisor to thousands of people in selling limited partnership interests and other direct investments.

After plaintiffs purchased their limited partnership interests and other direct investments, defendant provided them with monthly client statements that included, among other things, the price and value of the clients' securities and the portfolio's net worth. Plaintiffs allege that up to and including the monthly period from November 1, 1991 through November 30, 1991, Prudential represented that the then current value of the limited partnership and other direct investments were equal to the price originally paid for those investments. The "value" amount was used by Prudential in computing the net worth figure shown on the statements.

■ Next to the amount shown in the price column on the statements is the sign "#." For the statements beginning for the month ended October 31, 1986 through the month ended February 28, 1989, the "#" sign next to the price referred to a legend on the

face of the statements.[1] Beginning with the month ended March 31, 1989, the legend for "#" appeared on the back of the statements.[2] Beginning in December 1991, the format of the client statements was changed to report the direct investments in a separate section of the statements. In addition, the value of the direct investments were excluded from the net worth section of the client statements. Beginning in December 1991 (and continuing to the present), that section contains a similar legend on the .face of the statements which states that "[f]ace amounts do not represent current market value." *See* plf. am. cplt. exh. B.

Plaintiffs allege that the representations as to the value of the limited partnership and other direct investments were false and materially misleading, and that defendant omitted to state the true value of those interests. Plaintiffs assert claims under § 1962(c) of RICO, state common law claims for breach of fiduciary duty, fraud and negligent misrepresentation, and statutory claims under the consumer fraud acts for the states of New York, Illinois, Texas, Connecticut and California.

1. Plaintiffs have attached monthly client statements for the periods ended November 30, 1991 and December 31, 1991 to their complaint. Documents attached to the complaint are considered part of the pleadings for purposes of a motion to dismiss. *Foshee v. Daoust Construction*, 185 F.2d 23, 25 (7th Cir.1950). In support of its motion to dismiss, Prudential has submitted copies of all client statements sent to the Caraluzzis (and attached supporting affidavits). This court may consider all such documents, without converting the motion to one for summary judgment, since they represent the complete documents incorporated by reference in plaintiffs' complaint. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2nd Cir.1991).

2. We note the following legends which appeared on the client statements during the relevant period:

October 31, 1986—February 28, 1989: appeared on face of statement and stated: "Note: "#" the price shown appears for informational purposes only and is valued at the original purchase price. If you have sold or transferred this investment please contact your account executive." (emphasis omitted)

March 31, 1989—August 31, 1989: appeared on back of statement and stated: "# specifies that the price is shown for informational purposes only and is valued at the original pur-

## DISCUSSION

### A. Preliminary Issues

There are several preliminary issues that this court must address before moving on to the substance of this motion. The first matter concerns claim-splitting. Defendant maintains that the current action is related to a pending action before Judge Grady.[3] After defendant's motion to dismiss was filed, Judge Grady considered the issue of relatedness and has determined that the two actions should not be combined. This court need not further address the issue of claim-splitting.

The second preliminary matter concerns whether this court should consider defendant's motion to dismiss before addressing the class certification question. While generally the class certification issue is decided before turning to the merits of the case, *Rutan v. Republican Party of Illinois*, 868 F.2d 943, 947 (7th Cir.1989), *aff'd in part and rev'd in part*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) (rev'd on other grounds), there are exceptions to the rule. In *Illinois State Rifle Association v. State of*

chase price. If you have sold or transferred this investment, please contract your Financial Advisor."

September 30, 1989—April 30, 1990: appeared on back of statement and stated: "# specifies that the position is shown for informational purposes only and is valued at the original purchase price. If you have sold or transferred this investment, please contact your Financial Advisor."

May 31, 1990—February 28, 1991: appeared on back of statement and stated: "# specifies that the position and price are shown for information purposes only and it is valued at the original purchase price. If you have sold or transferred this investments, please contract your Financial Advisor."

March 31, 1991—November 30, 1991: appeared on back of statement and stated: "# specifies that the position shown is for informational purposes only and that this investment is stated at original cost which may not represent the current market value. To obtain a current estimate, if available, contact your Financial Advisor."

3. Pending before Judge Grady is a class action against Prudential on behalf of investors in the Summit limited partnership. *Levine, et al., v. Prudential–Bache Properties Inc., et al.*, No. 92 C 0052.

*Illinois,* Judge Shadur addressed the motion to dismiss before deciding the class certification issue. 717 F.Supp. 634 (N.D.Ill.1989). Judge Shadur noted that because "the motion to dismiss was filed as defendants' opening move," and because the court viewed the complaint as "facially suspect in more than one respect that appeared incurable," the dispositive motion could be considered first. *Id.* at 639 n. 12. Judge Shadur further pointed out that if the class certification issue was addressed first, there could be a substantial delay in the litigation. *Id.* Other courts have followed Judge Shadur's rationale and, in certain circumstances, have moved directly to the motion to dismiss before deciding the class certification issue. *Smiley v. City of Chicago,* 1991 WL 156208, 1991 U.S.Dist. Lexis 11011 (N.D.Ill. Aug. 1, 1991); *McCann v. City of Chicago,* 1990 WL 70415, 1990 U.S.Dist. Lexis 5448 (N.D.Ill. May 3, 1990). Here defendants have chosen to move for dismissal. And, there has already been a significant delay in this case in order to address the relatedness issue. Furthermore, it is relevant that neither party has objected to nor raised concerns about this court's consideration of defendant's motion to dismiss before deciding the issue of class certification. Of course only the named plaintiffs are bound by this decision. If another plaintiff chooses to sue, this court's decision will be persuasive, "rather than the bar as to all class members that such a decision would provide if rendered after class certification." *Illinois State Rifle Ass'n,* 717 F.Supp. at 639 n. 12.

The final preliminary issue concerns defendant's argument that many members of the class have already settled actions against Prudential for their purchases of Summit limited partnership interests. Although this court has not yet certified the class, we note that the individuals who have already settled their claims with Prudential are precluded from further litigation of those claims. Plaintiffs agree that those individuals would be excluded from the class.

## B. *Merits of the Case*

### 1. *RICO Claim*

■ Plaintiffs allege that Prudential violated § 1962(c) of RICO by conducting, or participating in the conduct of, the affairs of an enterprise through a pattern of racketeering activity involving predicate acts of mail fraud. In order to prove a claim of mail fraud plaintiff must demonstrate the existence of a scheme to defraud, the intent to defraud, and the use of the mails (or wires) to further the scheme. *Associates in Adolescent Psychiatry S.C. v. Home Life Insurance Co. of New York,* 751 F.Supp. 727, 729–30 (N.D.Ill.1990). This court need look no further than the first element of mail fraud in order to conclude that plaintiffs cannot make out a RICO claim.

■ A scheme to defraud must involve "some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." *Spiegel v. Continental Illinois National Bank,* 790 F.2d 638, 646 (7th Cir.), *cert. denied,* 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986) (citation omitted). Plaintiffs claim that Prudential misrepresented the value of the limited partnership interests and other direct investments since those investments were recorded at the purchase price on the statements and not current market value. Plaintiffs maintain that they were deceived as to the true value of those direct investments because they thought the "value" column of the statements represented the current market value of those investments.

Plaintiffs' allegations are without merit. First, it is not enough for plaintiffs to believe that the amounts recorded in the "value" column represented current market value. *Associates in Adolescent Psychiatry,* 751 F.Supp. at 731 (stating that subjective views do not amount to a fraudulent misrepresentation). Furthermore, Prudential explicitly disclosed on the statements themselves that the "price" reported for the direct investments represented the purchase price. On each client statement, the amounts reported in the price column were followed by a "#" symbol which referred to a legend (located either on the front or back of the statement). The legend disclosed that those prices were reported for informational purposes only and represented the original purchase price.

Defendant did not expressly state, until March 1981, that the original cost was not necessarily the current market value. It would have been well advised to do so, if for no other purpose than the avoidance of this and other lawsuits. Plaintiffs try to tease from that, however, a fraudulent scheme, and that they cannot do. The information provided always indicated that "value" was carried at the cost price, without any attempt to estimate or establish the current market price. That scenario is not the stuff of a fraudulent scheme, or even, in the circumstances here alleged, of a negligent misrepresentation.

Plaintiffs argue that although the "#" appeared next to the price amount, there was no such symbol next to the value or net worth amounts, and it was not reasonable for them to have known that those pieces of information were related. We disagree. It is apparent from even a cursory review of the client statements that the "value" column relates to the "price" column. On the same line of the statement the "quantity" of the direct investment is recorded, then the "price" (with the "#" next to the amount), followed by the "value." The quantity multiplied by the price equals value.[4] And the sum of the figures in the value column equals the "net worth." We must assume that plaintiffs are persons of at least ordinary intelligence and that they realized that Prudential's disclosure as to the price of the direct investments was related to the value of those investments.[5] Plaintiffs can neither disavow the disclosures in the statements nor can they ask this court to ignore the remaining pieces of information available to them. *Teamsters Local 282 Pension Trust Fund v. Angelos,* 762 F.2d 522, 530 (7th Cir.1985). There were no misrepresentations reasonably calculated to deceive persons of ordinary prudence and comprehension about the value of plaintiffs' direct investments.

■ In addition, plaintiffs allege that the client statements were misleading because the statements omitted the true value of the limited partnerships and other direct investments. An omission of a material fact can constitute fraud under RICO if either there exists a duty to disclose the information or the defendant makes statements of half-truths or affirmative misrepresentations. *See Reynolds v. East Dyer Development Co.,* 882 F.2d 1249, 1252 (7th Cir.1989); *United States v. Keplinger,* 776 F.2d 678, 697–98 (7th Cir.1985), *cert. denied,* 476 U.S. 1183, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986). Here plaintiffs have not alleged any basis for Prudential's duty to disclose the "true value" of the direct investments. *See e.g., Reynolds,* 882 F.2d at 1252; *Federal Paper Board Co., Inc. v. Amata,* 693 F.Supp. 1376, 1391 (D.Conn.1988); *Compania Sud–Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.,* 785 F.Supp. 411, 422 (S.D.N.Y. 1992). Furthermore, defendant has not made any affirmative misrepresentations or half-truths. As discussed above, those investments were not misrepresented on the statements.

■ In addition, the alleged omissions of which plaintiffs complain do not amount to a scheme to defraud. The alleged omissions were not reasonably calculated to deceive an ordinary prudent person. A reasonable investor could not have relied on the alleged omissions to conclude that the current value of the direct investments equaled the purchase price. Plaintiffs' allegations that the omissions amounted to a scheme to defraud are particularly unreasonable in light of the disclosures on the statements, and given that the "price" remained constant over the years and equalled the purchase price of the investments. Omissions do not amount to a scheme to defraud where the items allegedly omitted could have been discovered through the exercise of ordinary intelligence. *See e.g., Compania,* 785 F.Supp. at 425; *Blount Financial Services, Inc. v. Walter E. Heller*

---

4. For example, on the monthly statement ending October 31, 1986, the quantity is reported at 1250, the price at 20.000# and the value at 25,000.00. A person of ordinary reasonable intelligence would calculate that the value was the quantity multiplied by the price.

5. Furthermore, plaintiffs admittedly are sophisticated investors, making it even more difficult to believe that they did not realize that the value and net worth amounts were unrelated to the price of the investments.

& Co., 819 F.2d 151, 153 (6th Cir.1987). This is clearly not the type of situation that RICO was intended to remedy.

Plaintiffs do not and cannot allege that the claimed misrepresentations and omissions were reasonably calculated to deceive persons of ordinary prudence and comprehension. There is no "scheme to defraud" under RICO and defendant's motion to dismiss is granted as to count I.

### 2. State Law Claims

Plaintiffs have alleged state law claims for breach of fiduciary duty, fraud, negligent misrepresentation, and violation of various consumer fraud statutes under the laws of several states.[6] For purposes of this motion this court will apply Illinois law to the Caraluzzis' common law claims. The parties do not dispute the application of Illinois law in this motion. Checkers, Simon & Rosner v. Lurie Corp., 864 F.2d 1338, 1345 (7th Cir. 1988) (stating that the court must apply the substantive law of the forum state unless the parties to a diversity case argue that the forum state's conflict-of-law rules require the application of another state's laws); Stavriotis v. Litwin, 710 F.Supp. 216, 217 (N.D.Ill. 1988) (stating that a federal court must apply the law of the state in which it sits (including that state's choice-of-law rules) in a diversity case).

### a. Breach of Fiduciary Duty Claim

■■■■■ Defendant contends that plaintiffs have failed to state a breach of fiduciary duty claim. Prudential argues that it is not enough for the Caraluzzis to merely allege that defendant was their broker and financial advisor, in whom plaintiffs placed trust and confidence. Defendant maintains that in a case such as this, where a fiduciary relationship does not exist as a matter of law, facts

from which a fiduciary relationship arises must be pled and proved by clear and convincing evidence. We disagree. Plaintiffs are entitled to follow the federal rules of notice pleading and therefore need only plead the existence of a fiduciary relationship and some facts to substantiate the claims made. Ambrosino v. Rodman & Renshaw, Inc., 635 F.Supp. 968, 973 (N.D.Ill.1986). Here plaintiffs have alleged a broker-customer relationship and that Prudential acted as their investment advisor. While this court agrees that the mere existence of a broker-customer (or investment advisor-customer) relationship is not proof of fiduciary character, the allegation of such relationships in a claim for breach of fiduciary duty is sufficient to withstand a motion to dismiss. Russo v. Bache Halsey Stuart Shields, Inc., 554 F.Supp. 613, 621 (N.D.Ill.1982); Sostrin v. Altschul, 492 F.Supp. 486, 489 (N.D.Ill. 1980).[7]

■■■■■ However, the Caraluzzis' claim for breach of fiduciary duty is barred by the statute of limitations. The Illinois borrowing statute causes the forum court to apply the statute of limitations of the state where the cause of action arose, if that statute of limitations would preclude recovery. Sabena Belgian World Airways v. United Airways, Inc., 1991 WL 78175, 1991 U.S.Dist. Lexis 6041 (N.D.Ill. May 6, 1991). The Illinois borrowing statute, Ill.Rev.Stat. ch. 110, ¶ 13–210, applies when (1) neither party to an action resides in Illinois and (2) the cause of action arose outside of Illinois. LeBlanc v. G.D. Searle & Co., 178 Ill.App.3d 236, 127 Ill.Dec. 423, 424, 533 N.E.2d 41, 42 (1988). The Caraluzzis are residents of Connecticut and, for purposes of the Illinois borrowing statute, Prudential "resides" in Delaware (the state where it was incorporated). Id., 127 Ill.Dec. at 425, 533 N.E.2d at 43 (stating

---

6. Only the Connecticut consumer fraud statute applies to the Caraluzzis.

7. It is important to point out that from the pleadings it appears that the Caraluzzis would have a difficult time establishing a fiduciary relationship. CFTC v. Heritage Capital Advisory Services, Ltd., 823 F.2d 171, 173 (7th Cir.1987) (stating that a broker has a fiduciary duty to his customer only when he operates a discretionary account in which the broker controls the investment ac-

count); Burdett v. Miller, 957 F.2d 1375, 1381 (7th Cir.1992) (stating that fiduciary duties are generally not imposed in the relationship between an investment advisor and the people he advises). However, at this stage of the proceedings, we cannot say that it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

that a corporation resides where it is incorporated for purposes of the Illinois borrowing statute). Furthermore, the cause of action arose in Connecticut since not only were the monthly statements mailed to the Caraluzzis' Connecticut address, but, according to the statements, the Prudential financial advisor and the office serving the Caraluzzis' account were located in Connecticut. (Plf. cplt. exh. A; Mellusi aff. exh. 1). Therefore, we give effect to the applicable Connecticut statute of limitations.

Under Connecticut law claims for breach of fiduciary duty, which sound in tort, must be brought within three years from the date of the complained-of act or omission. *D'Addario v. Bergman*, 1992 WL 11173, 1992 Conn.Super. Lexis 114 (Conn. Jan. 16, 1992); *Meredith v. Rippetto*, 1991 WL 218529, 1991 U.S.Dist. Lexis 14793 (D.Conn. Aug. 27, 1991). Actionable harm for purposes of commencing the running of Connecticut statute of limitations occurs when the plaintiff discovers, or in the exercise of reasonable care should have discovered, the essential elements of his cause of action. *Sandstrom v. Chemlawn Corp.*, 759 F.Supp. 84, 86 n. 1 (D.Conn.1991).

Plaintiffs argue that the applicable statute of limitations is a fact question when, as in this case, it is premised on whether a plaintiff knew or should have known of his cause of action. However, as plaintiffs further point out, the court can decide the question as a matter of law where only a single conclusion is compelled by undisputed facts. Such is the case here where the Caraluzzis, through the exercise of ordinary diligence, could have discovered the alleged breach of fiduciary duty (the alleged misrepresentations and omissions) and injuries more than three years before they filed this action. The Caraluzzis began receiving monthly client statements in October 1986. They could have discovered at that time (and in every statement from then on) that their direct investments were not reported at current value merely by reading the applicable disclosures on the statements. Furthermore,

plaintiffs could have made additional inquiry if they did not understand the disclosures. Plaintiffs filed this action in February 1992— over five years after they began receiving monthly client statements.[8] Count II is barred by the statute of limitations.

#### b. *Fraud Claim*

In order to state a claim for fraud in Illinois a plaintiff must allege (1) a false statement of material fact; (2) that the person who made the statement knew it was false; (3) intent to induce the other party to act; (4) action by the other party in justifiable reliance on the truth of the statement; and (5) damage resulting from such reliance. *Craig v. First American Capital Resources, Inc.*, 740 F.Supp. 530, 539 (N.D.Ill.1990). In accordance with our position in the RICO section above, plaintiffs have failed to allege any misrepresentations or omissions of material fact on which any reasonable investor justifiably could have relied. For that same reason, the Caraluzzis' fraud claim is dismissed. *See Associates in Adolescent Psychiatry*, 751 F.Supp. at 729–30 (noting that both mail fraud and common law fraud require proof of the same universal elements of fraud); *Compania Sud–Americana*, 785 F.Supp. at 424 (stating that where the "fraudulent scheme is premised upon an inadequate fraud claim, allegations of mail and wire fraud must generally also fail").

#### c. *Negligent Misrepresentation*

The elements for negligent misrepresentation are essentially the same as for fraudulent misrepresentation, except that the defendant's mental state is different. The defendant need not know the statement is false. *Board of Education v. A, C, and S, Inc.*, 131 Ill.2d 428, 137 Ill.Dec. 635, 646, 546 N.E.2d 580, 591 (1989). As discussed in the RICO and fraud sections above, plaintiffs fail to allege any material misrepresentation or omission on which they justifiably could have relied. Plaintiffs' negligent misrepresentation claim is therefore also dismissed.

8. Plaintiffs last purchase of Summit investments was in June, 1987. This action was filed over three years from that date.

### d. *Connecticut Unfair Trade Practices Act*

The Caraluzzis, as residents of Connecticut, allege that Prudential was in violation of the Connecticut Unfair Trade Practices Act (CUTPA), Conn.Gen.Stat. § 42–110a *et seq.* The Connecticut Supreme Court has held that CUTPA does not apply to deceptive practices in connection with the purchase or sale of securities. *Russell v. Dean Witter Reynolds, Inc.*, 200 Conn. 172, 510 A.2d 972, 977 (1986). In *Russell,* the court held that CUTPA is not applicable to securities transactions because such transactions are governed by a different statutory remedy and because they are not among the type of transactions which the Federal Trade Commission Act (the FTC Act) has been applied.[9] *Id.* The question of whether CUTPA applies is one of law. *Connelly v. Housing Authority of the City of New Haven,* 213 Conn. 354, 567 A.2d 1212, 1217 (1990). And this court agrees with defendant in that CUTPA does not apply in this case. Count VIII is dismissed.

---

**9.** The *Russell* court noted that the application of the FTC Act is the lodestar for the scope of CUTPA. The court further pointed out that the FTC does not regulate securities because such transactions fall within the ambit of the Securities and Exchange Commission. *Russell,* 510 A.2d at 977.